UNITED STATES, Appellee

v.

Michael E. HARRIS, Major
U.S. Army, Appellant.

No. 96–0710.
Crim.App. No. 9401347.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 4, 1996.

Decided June 24, 1997.

For Appellant: *Captain Patricia A. Harris* (argued); *Colonel John T. Phelps II* (on brief); *Colonel Stephen D. Smith, Lieutenant Colonel Michael L. Walters, Lieutenant Colonel John T. Rucker, Captain Matthew A. Myers,* and *Captain Michael E. Hatch.*

For Appellee: *Captain Robert F. Resnick* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Captain Joanne P. Tetreault* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of members sitting at Fort Jackson, South Carolina, convicted appellant, contrary to his pleas, of drunk driving, reckless driving, involuntary manslaughter, and conduct unbecoming an officer and gentleman, in violation of Articles 111, 119, and 133, Uniform Code of Military Justice, 10 USC §§ 911, 919, and 933, respectively. The adjudged and approved sentence provides for a dismissal and confinement for 3 months. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR AND DEPRIVED [APPELLANT] OF HIS RIGHT TO DUE PROCESS AND TO A FAIR TRIAL WHEN THE JUDGE ALLOWED A HIGHWAY PATROLMAN TO PRESENT HEARSAY EVIDENCE TO THE PANEL AS THE BASIS FOR HIS TESTIMONY AS AN EXPERT.

For the reasons set out below, we resolve the granted issue against appellant.

The charges arose from a collision involving appellant's car and two motorcycles on the evening of March 13, 1994. At issue is the admissibility of the testimony of Lance Corporal (LCpl) Day, a member of the South Carolina Highway Patrol who investigated the incident and testified as an expert witness. Other witnesses were: Major (MAJ) Bogardus, the operator of one of the motorcycles who was injured in the collision; Sergeant First Class (SFC) Dickinson, the driver of a black Jeep Wrangler that was following the two motorcycles; Mr. Richardson, a passenger in SFC Dickinson's Jeep; Mr. Martin, a local resident who saw the accident as he was driving his automobile toward the intersection and toward the motorcycles; and Mr. Morrow and Ms. Diamond, two local residents who heard but did not see the collision and who described the scene, the reactions of the parties, and the demeanor of appellant at the scene.

LCpl Day testified last, after the other witnesses described the incident. MAJ Bogardus, SFC Dickinson, and Mr. Richardson all testified that Ms. Carver, the deceased victim, was riding the lead motorcycle, followed by MAJ Bogardus on his motorcycle. SFC Dickinson, Mr. Richardson, and Ms. Donna Starr were following the two motorcyclists in SFC Dickinson's Jeep. They all testified that appellant's white Jeep Cherokee ran a stop sign and hit Ms. Carver's motorcycle. MAJ Bogardus hit the side of appellant's Jeep Cherokee. After the collision, appellant was racing his engine and spinning his wheels, causing SFC Dickinson and Mr. Richardson to conclude that he was trying to leave the scene. Appellant's Jeep Cherokee hit a cement wall and came to a stop in a private driveway. SFC Dickinson and Mr.

Richardson approached appellant's vehicle and told him to shut off the engine and get out. When appellant did not respond, SFC Dickinson pulled him out of the vehicle.

Mr. Martin, a local resident, saw the accident while approaching the intersection from the opposite direction, driving toward the motorcycles. He testified that he saw the white Jeep run the stop sign and hit one of the motorcycles. He also observed the white Jeep "going back and forth" and the driver "spinning his wheels" after the accident.

LCpl Day testified that he received formal training in accident investigation as part of his initial training as a highway patrolman, as well as additional schooling in accident investigation. During his 9–and–a–half years as a highway patrolman, he investigated between 1500 and 2000 accidents. He was the lead investigator of approximately 50 fatal accidents and participated in investigations of about 100 fatal accidents.

LCpl Day testified that he smelled alcohol when he approached appellant, and he noticed that appellant's speech was slurred. Day instructed appellant to perform two sobriety tests, reciting the alphabet and counting backwards, but appellant was unable to do them properly.

Based upon his examination of the physical evidence at the scene and his interviews with witnesses, LCpl Day concluded that appellant ran a stop sign and struck the deceased victim's motorcycle, that there was an emotional exchange between appellant and persons involved in the accident, and that appellant backed up and was attempting to drive away when he struck a brick wall and came to a stop in a private driveway.

During his direct examination, LCpl Day was asked by trial counsel whether he was "able to determine the point at which Ms. Carver was struck by the accused's jeep?" LCpl Day responded in the affirmative and began to state where the point of impact was when the military judge interjected and asked, "[W]ould you just tell us how you determined the point of impact?" LCpl Day responded that he determined the point of impact "through the investigation and talking to the witnesses and through the marks that

lead up to the motorcycle came from the same area." LCpl Day went on to explain that he determined the direction of appellant's travel and the direction of travel and location of the two motorcycles from witness interviews. Defense counsel did not object to the military judge's question.

When trial counsel asked LCpl Day to opine which vehicle caused a certain set of tire marks near the deceased victim, LCpl Day responded that he had "no problem saying [that] Major Harris' vehicle caused it." LCpl Day continued his answer by saying, "After talking to one of the witnesses or several of the witnesses, stated that Major ——," at which point defense counsel objected on the ground that what the witnesses said was hearsay. The military judge overruled the objection saying, "It's the type of information that is reasonably relied upon by the experts in this area." Defense counsel made no further objections.

During cross-examination, defense counsel used the pretrial statement of SFC Dickinson, one of the parties involved in the accident, to dispute LCpl Day's conclusion that appellant was trying to flee the scene and to show that appellant moved his vehicle to avoid a hostile confrontation. Defense counsel also established that LCpl Day's conclusions were based in part on what witnesses told him and asserted, "[I]f the witnesses are wrong, you're wrong."

LCpl Hughes, a member of the South Carolina Highway Patrol, testified that appellant consented to a breath test after being advised of his rights under the South Carolina Implied Consent Statute. LCpl Hughes administered the test at about 10:00 p.m., about an hour after the collision. He determined that appellant's blood-alcohol content was .18 percent (.18 grams of ethanol per 100 milliliters of blood). Based on his observation of appellant for approximately 30 minutes and the results of the breath test, LCpl Hughes concluded that appellant was intoxicated.

Appellant testified in his own defense. He testified that there was a stop sign at the intersection where the accident happened, but that he thought it was a four-way stop. He testified that he slowed down but did not

come to a complete stop. He testified that he saw a vehicle approaching from a distance but did not see the motorcycles until it was too late to avoid a collision. He swerved to the left, struck one of the motorcycles, and then hit a mailbox. He admitted consuming four beers and a pizza during a 4-hour period before the accident, but he denied that he was impaired.

During his instructions on findings, the military judge instructed the members that LCpl Day, as well as several others, had been allowed to testify as expert witnesses "because their knowledge, their skill, experience, training or education may assist you in understanding the evidence or in determining a fact in issue." He instructed the members that they "are not required to accept the testimony of an expert witness or give it more weight than the testimony of an ordinary witness." He instructed that "when an expert witness answers a hypothetical question, an expert assumes as true every asserted fact stated in the question" and that they could not consider an expert's answer "unless you find that the evidence establishes the truth of the asserted facts...." The military judge did not give a limiting instruction concerning hearsay evidence elicited as the basis for the experts' opinions. Neither side objected to the instructions or requested additional instructions.

## Discussion

Appellant argues that the military judge erred when he ruled that LCpl Day was qualified to be an expert witness and when he allowed Day to present hearsay evidence as the basis of his expert opinion.

Mil.R.Evid. 702, Manual for Courts-Martial, United States (1995 ed.), provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The first question is whether the military judge erred by ruling that LCpl Day was an "expert." We review the military judge's ruling for an abuse of discretion. To prevail, "appellant must come 'forward with conclusive argument' that there was an abuse of discretion." *United States v. Houser*, 36 MJ 392, 397 (CMA 1993), quoting *United States v. Mukes*, 18 MJ 358, 359 (CMA 1984).

■ A witness may testify as an expert under Mil.R.Evid. 702 if (1) he or she has scientific, technical, or other specialized knowledge that will assist the members, and (2) the witness is qualified as an expert by virtue of knowledge, skill, experience, training, or education. *See United States v. Stinson*, 34 MJ 233, 238 (CMA 1992). Mil. R.Evid. 702 permits "[a]nyone who has substantive knowledge in a field beyond the ken of the average court member" to qualify as an expert witness. *United States v. Stark*, 30 MJ 328, 330 (CMA 1990). "The witness need not be 'an outstanding practitioner,' but only someone who can help the jury." *United States v. Mustafa*, 22 MJ 165, 168 (CMA 1986). Crime-scene analysis is generally recognized as the product of "specialized knowledge" within the meaning of Mil.R.Evid. 702. *See United States v. Meeks*, 35 MJ 64, 68 (CMA 1992). We hold that the military judge did not abuse his discretion by permitting LCpl Day to testify as an expert because LCpl Day had training and experience "beyond the ken of the average court member." *United States v. Stark, supra.*

■ We turn next to the hearsay testimony on which LCpl Day's opinion was based in part, and which he repeated to the court members. Appellant argues that the prosecution used LCpl Day to "smuggle" inadmissible hearsay into the courtroom. He further argues that the military judge gave the members the impression that LCpl Day's testimony "was more credible and authoritative than that of the eyewitnesses to the accident[,] ... thereby allowing the Government to present cumulative and redundant testimony to unfairly and prejudicially buttress its case." Final Brief at 7–8. The Government argues that the military judge's instruction to the members that they were "not required to accept the testimony of an expert witness or give it more weight than the testimony of an

ordinary witness" was sufficient to preclude any unfair bolstering of the eyewitness testimony. Final Brief at 9–10.

■ Mil.R.Evid. 703 provides that the facts relied upon by the expert "need not be admissible in evidence." Under Mil.R.Evid. 703, "an expert's opinion may be based upon personal knowledge, assumed facts, documents supplied by other experts, or even listening to the testimony at trial." *United States v. Raya*, 45 MJ 251, 253 (1996), citing *Houser, supra* at 399.

■ Mil.R.Evid. 705 provides, "The expert may in any event be required to disclose the underlying facts or data [on which the expert opinion is based] on cross-examination." Mil. R.Evid. 705 is a rule of disclosure, not an exception to the hearsay rule. Furthermore, it applies to cross-examination, not direct examination by the proponent of the evidence. "[E]xperts are not licensed to ascend the witness stand and commence spouting hearsay generally." *United States v. King*, 35 MJ 337, 341 (CMA 1992).

■ This Court has been vigilant against efforts to "smuggle" hearsay into a trial under the guise of showing the factual basis for an expert opinion. *See, e.g., United States v. Neeley*, 25 MJ 105, 106–07 (CMA 1987); *United States v. Stark*, 24 MJ 381 (CMA 1987). Where eliciting the basis for an expert opinion will place otherwise inadmissible evidence before the court members, the military judge should apply the balancing test under Mil.R.Evid. 403 to determine if the prejudicial impact of the inadmissible evidence outweighs the probative value of showing the basis for the expert opinion. *Stark, supra* at 385. We have also suggested that a limiting instruction might be advisable, but failure to give such an instruction *sua sponte* is not plain error. *Neeley, supra* at 107.

Defense counsel's hearsay objection was sufficient to avoid forfeiture of the hearsay and Mil.R.Evid. 403 issues. The evidence had probative value because it provided the factual basis for the expert opinion. Any prejudicial impact would arise from "smuggling" in inadmissible evidence, but in this case the evidence was already before the members.

■ The record does not reflect that the military judge balanced the probative value of the evidence against its prejudicial impact. A military judge enjoys "wide discretion" in applying Mil.R.Evid. 403. *United States v. Rust*, 41 MJ 472, 478 (1995). Ordinarily, appellate courts "exercise great restraint" in reviewing a judge's decisions under Rule 403. *See Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir.1993). Where, however, the military judge "fails to perform the required balancing and to explain the grounds for denying a Rule 403 objection," his ruling is not entitled to such deference. *Id.*

We need not decide whether it was error to permit LCpl Day to recite the hearsay basis for his opinion over defense objection, however, because we are satisfied that any errors in permitting the hearsay evidence or failing to give a limiting instruction were harmless under the circumstances of this case. There was no "smuggling" in of inadmissible evidence because direct evidence from the eyewitnesses themselves already was before the court-martial. The impact of LCpl Day's testimony was to show that the physical evidence was consistent with the eyewitness testimony. All the witnesses relied upon by LCpl Day and referred to in his testimony had preceded him and had testified in considerable detail. LCpl Day's hearsay evidence was clearly cumulative, and its weight was put in proper perspective by the military judge's instructions. Under the circumstances, there is no reasonable likelihood of prejudice arising from LCpl Day's reference to what the eyewitnesses told him.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and EFFRON concur.