UNITED STATES, Appellee,

v.

Rodney D. HALFORD, Airman First
Class, U.S. Air Force, Appellant.

No. 98–0325.
Crim.App. No. 32280.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 15, 1998.

Decided June 2, 1999.

Gierke, J., filed opinion dissenting in
part, concurring in part, and concurring in
the result.

CRAWFORD, J., delivered the opinion of
the Court, in which COX, C.J., and SULLI-
VAN and EFFRON, JJ., joined. GIERKE,
J., filed an opinion dissenting in part, concur-
ring in part, and concurring in the result.

For Appellant: *Colonel Douglas H. Kohrt* (argued); *Major Carol L. Hubbard* (on brief).

For Appellee: *Major Kenneth A. Arnold* (argued); *Colonel Anthony P. Dattillo* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Brenda J. Hollis.*

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by officer members of rape, false official statement, and false swearing, in violation of Articles 120, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 907, and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 2 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed.

We granted review on the following issues:

I. WHETHER THE MILITARY JUDGE ERRED BY ADMITTING THE ACUTE STRESS DISORDER TESTIMONY OF DR. BYRNES BY FAILING TO BALANCE THE PROBATIVE VALUE OF SUCH TESTIMONY AGAINST THE PREJUDICIAL IMPACT.

II. WHETHER THE MILITARY JUDGE ERRED BY PROHIBITING THE DEFENSE COUNSEL FROM TESTING THE BASIS OF DR. BYRNES' EXPERT OPINION DURING CROSS–EXAMINATION.

For the reasons set forth below, we find adversely to appellant on both issues.

### FACTS

The rape occurred on Friday night, April 21, 1995. The victim, H, had arrived at Pope Air Force Base, North Carolina, 4 days earlier. When she moved into the dorm, she was first met by the assistant dorm manager, C, who gave her an initial briefing and took her under his wing. On April 21, C invited her to a party.

After the party, at which H consumed too much alcohol, she returned to her dorm with appellant, where the sexual intercourse ensued that resulted in the rape charge against appellant. Later that same evening, C went to H's room with two others. When C heard that H had engaged in sexual intercourse with appellant, C came into the room and started shoving her and hitting her. Then C and the two others raped H. Appellant was not present during the incident involving C.

H did not file a rape report with respect to either incident until later in the following week when she was hospitalized because of a drug overdose. While being treated at the hospital, she reluctantly revealed what had transpired on the evening of the rapes.

During opening statements, defense counsel set forth their theory that H could not be believed because of "inconsistencies, retractions and lack of physical evidence." The defense contended that H was seen by various psychologists and psychiatrists at the hospital concerning the "problems" she said she was having in dealing with these incidents. During these visits, H was uncooperative and refused to talk about the incidents.

At trial, the Government offered evidence from Dr. Steven Byrnes, a psychologist who treated H. The Government argued that H's non-verbal conduct and statements to Dr. Byrnes, including her emotional avoidance, crying, withdrawal, and refusal to give details, were the result of acute stress disorder. The defense objected "that his testimony as to diagnosis is irrelevant. . . . We have proffered to the Government that we are not intending to call any expert witnesses. If indeed we did, I do believe then that conflicting diagnosis would be proper for rebuttal. At this point I do not believe that any diagnosis by Dr. Byrnes is proper for the Government's case-in-chief." Later, the defense again indicated that Dr. Byrnes' testimony "regarding diagnosis, etc. is pure bolstering and is not relevant, especially in regard to any symptomalogy [sic] with regards [sic] to others he has treated. . . . We don't believe that there is a medical exception hearsay criteria either. That is the only argument I have, Sir, but we believe that the medical hearsay and the expert diagnosis should not be allowed." The defense did not object on the basis that Dr. Byrnes' testimony, under

Mil.R.Evid. 403, Manual for Courts–Martial, United States (1995 ed.), would be substantially more prejudicial than probative. The judge found that the evidence was admissible under the medical exception.

The defense contends that the prosecution offered Dr. Byrnes' testimony to show that H "acted like a rape victim." Final Brief at 5. The defense also argues that the judge abused his discretion under Mil.R.Evid. 403.

The Government argues that, even if the expert testimony was inadmissible, its receipt into evidence should be considered harmless. Appellant's admissions in his May 10, 1995 statement, coupled with the testimony of the victim and the other witnesses placing appellant in the victim's room, provided ample evidence of rape. Additionally, the military judge gave limiting instructions on the use of Dr. Byrnes' testimony.

## DISCUSSION—ISSUE I

■ Expert testimony in sexual abuse cases may take many forms. The expert may offer evidence that the characteristics demonstrated by the victim lead to a diagnosis of "rape-trauma syndrome ... [which] is probative ... on the issue of consent by the victim." *United States v. Carter,* 26 MJ 428, 429 (CMA 1988). Or, the expert may testify that certain behavioral characteristics are consistent with a "rape trauma model." *United States v. Houser,* 36 MJ 392, 394–96 (CMA), *cert. denied,* 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *see also United States v. Reynolds,* 29 MJ 105, 111 (CMA 1989)("[T]he plain rule of law is that an expert's testimony concerning 'rape-trauma syndrome' " is admissible); *United States v. Lee,* 28 MJ 52, 54–55 (CMA 1989)(admitted testimony to show victim suffered from post-traumatic stress disorder); *United States v. Snipes,* 18 MJ 172 (CMA 1984)(expert may testify victim's behavior is typical of abused child). However, the expert may not testify concerning the credibility of the victim or other witnesses, absent a proper foundation under Mil.R.Evid. 405. *See, e.g., United States v. Harrison,* 31 MJ 330 (CMA 1990); *United States v. Arruza,* 26 MJ 234 (CMA 1988).

■ When the defense, in the first instance, attacked H's credibility by noting her inconsistencies, retractions, and refusal to talk about the crime, the Government was allowed to explain that these behavioral characteristics occur in many cases of non-consensual sexual encounters. *See, e.g., United States v. Rynning,* 47 MJ 420, 422 (1998) (When appellant raised the issue that late and incomplete reporting showed lack of credibility, the Government "was entitled to rehabilitate their principal witness by explaining how her behavior did not necessarily undermine her credibility."); *United States v. Pollard,* 38 MJ 41, 48 (CMA 1993) (reluctance to report); *United States v. Houser, supra* (delayed report). Also, Dr. Byrnes did not express an opinion as to H's credibility or that the aforementioned factors showed that the crime was committed.

■ As noted above, the defense objected that Dr. Byrnes' testimony was pure bolstering and not admissible under Mil.R.Evid. 803(4) or the 700 Rules. The defense did not object under Mil.R.Evid. 403. Mil.R.Evid. 103(a)(1) requires "a timely objection ... stating the specific ground of objection, if the specific ground was not apparent from the context." The failure to object under Mil. R.Evid. 403 constitutes waiver in the absence of plain error. *United States v. Nelson,* 25 MJ 110, 112 (CMA 1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988). We hold that the admission of Dr. Byrnes' testimony by the military judge did not constitute plain error. *United States v. Powell,* 49 MJ 460 (1998).

Once the defense indicates that its theory is to attack the victim's credibility, it is appropriate for the prosecution to put the victim's inconsistencies and retractions and the refusal to cooperate in context. Under this theory, the probative value of Dr. Byrnes' testimony outweighed any prejudice to appellant. In *United States v. Combs,* 39 MJ 288, 290–91 n. 1 (CMA 1994), we said that when an expert's testimony is admitted, the

analytical model ... requires that the following be established:

(A) the qualifications of the expert, Mil. R.Evid. 702; (B) the subject matter of the expert testimony, Mil.R.Evid. 702; (C) the basis for the expert testimony, Mil.R.Evid. 703; (D) the legal relevance of the evidence, Mil.R.Evid. 401 and 402; (E) the reliability of the evidence, *United States v. Gipson*, 24 MJ 246 (CMA 1987), and Mil.R.Evid. 401; and (F) whether the "probative value" of the testimony outweighs other considerations. Mil.R.Evid. 403.

[*Houser, supra*] at 397. *See also United States v. Banks*, 36 MJ 150, 161 (CMA 1992).

Even though the defense did not make a specific objection under Mil.R.Evid. 403, we can presume that the judge performed the proper weighing analysis under the circumstances. In any event, the defense had the opportunity to argue to the court members that the victim's acute stress disorder occurred when C returned to H's room with two others and raped her. Thus, we further hold that there was no prejudice under the circumstances. *See United States v. Powell, supra.*

### DISCUSSION—ISSUE II

■ On cross-examination, trial defense counsel attempted to impeach Dr. Byrnes' testimony that the victim was suffering from acute stress disorder. The defense asked whether he was aware that the victim saw Dr. Cheevers, a psychiatrist at the hospital. At this point, the prosecutor objected. At a subsequent Article 39(a) * session, defense counsel explained that they wanted to impeach Dr. Byrnes based on the inconsistent diagnoses of Dr. Byrnes, Dr. Cheevers, and Dr. Nelson. The defense proffered that the other two doctors had diagnosed H as suffering from borderline personality disorder, but did not suggest that they had specifically ruled out acute stress disorder.

The defense proffered that Dr. Cheevers' and Dr. Nelson's opinions were presumably in H's file. Defense counsel argued that they wanted to test the basis for Dr. Byrnes' expert opinion by asking him about the other doctors' opinions in the same case. The judge sustained the objection, recommending that the defense bring in those doctors to give a different opinion.

Defense counsel never proffered that they wanted to ask Dr. Byrnes if he had read all of H's medical records, if he was aware of the diagnoses made by Drs. Cheevers and Nelson, or whether he relied on those diagnoses. *See* Mil.R.Evid. 703. In the absence of these questions, the defense did not lay an adequate foundation for the impeachment and the judge was correct in precluding the testimony that the defense counsel sought based on their proffers.

We agree with the court below that the opinions of the other two psychiatrists were hearsay and not admissible. *See* Mil.R.Evid. 801(c); *United States v. Neeley*, 25 MJ 105 (CMA 1987). The defense did not ask the required foundational questions to determine whether Dr. Byrnes relied upon other documents or opinions in reaching his conclusion. If he had relied upon them, then those opinions would have been a proper subject of cross-examination. Mil.R.Evid. 703 allows an expert to consider "facts or data in the particular case upon which [the] expert bases an opinion or inference [which] may be those perceived by or made known to the expert, at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Absent a proper foundation, it was not established that the other doctors' opinions were of the "type reasonably relied upon by experts." Thus, we hold that the judge did not abuse his discretion in precluding cross-examination of Dr. Byrnes about the opinions of Drs. Cheevers and Nelson.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

GIERKE, Judge (dissenting in part, concurring in part, and concurring in the result):

With respect to Issue I, I disagree with the majority's conclusion that defense coun-

---

*.  Uniform Code of Military Justice, 10 USC § 839(a).

sel's failure to make a specific reference to Mil.R.Evid. 403 waived any error in the admission of Dr. Byrnes' testimony. In *United States v. Harris*, 46 MJ 221, 225 (1997), this Court held that a hearsay objection was sufficient to avoid forfeiture of a Mil.R.Evid. 403 issue. In my view, the defense objection that Dr. Byrnes' testimony was not relevant was sufficient to preserve the issue whether it had sufficient relevance to satisfy Mil.R.Evid. 403. Furthermore, because the military judge failed to set out his reasons for determining that the probative value of Dr. Byrnes' testimony outweighed its prejudicial impact, his ruling is not entitled to the deference normally accorded to a judge's rulings under Mil.R.Evid. 403. *Id.*

In my view, the military judge erred by admitting Dr. Byrnes' testimony. The victim testified that the dormitory manager, Chris, with whom she had an ongoing sexual relationship, invited her to a party in the dormitory room of his friend, Shayne. She testified that she consumed three or four wine coolers during a period of about an hour and a half, and that Chris spiked her last drink with Jim Beam bourbon. She testified that she became so intoxicated that she had difficulty standing, and that she argued with Chris after consuming the spiked drink, because he would not give her a "straight answer" whether he was married. Appellant helped her back to her dormitory room, where she fell asleep on the sofa. She testified that, sometime later, appellant moved her onto the bed, undressed her, and had intercourse with her. While appellant was on top of her, she heard Chris and Shayne outside her room, and she called out to Chris. Chris and Shayne tried to push open the door, but appellant held it closed. Chris returned to his room, but Shayne pushed the door open and told appellant to leave. After appellant left, the victim told Shayne that she had been raped, but that she did not intend to report it because she was "drinking under age." She testified that Shayne departed and she went to sleep.

The victim testified further that, at about 2:00 or 2:30 a.m., Chris and two other men came to her room, where Chris accused her of "f——ing Rodney [appellant]." She testified that she had not seen the other two men before. Finally, she testified that Chris hit her in the ribs and threw her onto the bed, and that all three men gang raped her.

Based on this testimony, Dr. Byrnes' testimony was not relevant to the victim's failure to report appellant's conduct. The evidence of record reflects that Chris and his two friends were the primary source of her trauma. According to her own testimony, her failure to report appellant's misconduct was due to her reluctance to report that she had been drinking alcohol at a party when she was underage, not that she was traumatized. In my view, the prejudicial impact of blaming appellant for the emotional distress inflicted by Chris and his friends outweighed the minimal probative value of the evidence.

I agree with the majority, however, that admission of the testimony was harmless error, in light of the other evidence that was properly admitted and the military judge's limiting instructions.

With respect to Issue II, I agree with the majority that the military judge did not abuse his discretion by refusing to allow the defense to "smuggle" in the opinions of Drs. Cheevers and Nelson. *See United States v. Harris, supra.*