# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, D.C. KING**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**BEAU T. MARTIN**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201400315**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 17 April 2014.
**Military Judge:** LtCol E.A. Harvey, USMC.
**Convening Authority:** Commanding General, 1st Marine Logistics Group, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol E.J. Peterson, USMC.
**For Appellant:** LT Carrie Theis, JAGC, USN; LT Jacqueline Leonard, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; Capt Matthew Harris, USMC.

**18 June 2015**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his plea, of one specification of wrongful sexual contact in violation of Article 120(m), Uniform Code of Military Justice, 10 U.S.C. § 920(m) (2007). The appellant was acquitted of the greater offense of

aggravated sexual assault as well as two specifications of wrongful sexual contact, in violation of Articles 120(c) and 120(m), UCMJ, 10 U.S.C. §§ 920(c) and 920(m) (2007).  The members sentenced the appellant to be reduced to pay-grade E-1 and a bad-conduct discharge.  The convening authority approved the sentence as adjudged.

The appellant now raises four assignments of error (AOE): (1) the military judge erred by instructing the members that wrongful sexual contact was a lesser included offense (LIO) of aggravated sexual assault; (2) the military judge erred by permitting human lie detector testimony; (3) the military judge erred by permitting the utilization of MILITARY RULE OF EVIDENCE 413, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) to argue that the appellant had a general propensity to commit sexual crimes based only upon the charges before the court martial; and, (4) the evidence is legally and factually insufficient to support a conviction.[1]

After carefully considering the record of trial and the parties' pleadings, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

CI enlisted in the Marine Corps in February 2011 and reported to her first command as a private first class (PFC) in August of 2011.[2]  The appellant was her platoon sergeant and direct supervisor at that command.  A few weeks after she arrived, the appellant invited PFC CI to a party in his honor to be held at the on-base home of a staff sergeant (SSgt).  CI arrived at the party with her husband, Marine Corporal (Cpl) AI and consumed alcohol throughout the evening, eventually becoming intoxicated.

As the party wound down, PFC CI and her husband went to sleep in a bed in the SSgt's spare bedroom.  The appellant and several others went to sleep on the floor of the same bedroom. PFC CI claims she woke later that night to the appellant

---

[1] AOE #3 is without merit.  *See United States v. Bass*, __ M.J. __, No. 201400229 (N.M.Ct.Crim.App. 27 May 2015).  AOE #4 is also without merit.  *See United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

[2] At the time of trial PFC CI was a lance corporal, but will be referred to as PFC CI throughout this opinion.

kneeling on the floor next to her with his finger inside of her vagina. When PFC CI rolled away from the appellant and unsuccessfully attempted to wake her husband, the appellant left the room.

The next morning, PFC CI and her husband went home. Although PFC CI told her husband about the assault approximately a week later, she did not report the assault to authorities. Instead, over a year later, PFC CI informed a female Marine co-worker about the assault. That co-worker reported the assault to the command and an investigation ensued.[3] Additional facts necessary to resolve the assigned errors are included below.

**Discussion**

The appellant first argues that the military judge erred by instructing the members that they could find the appellant guilty of wrongful sexual contact as an LIO of aggravated sexual assault. The Government responds that the appellant knowingly waived any challenge to the applicability of the LIO by specifically requesting the LIO instruction. We concur with the Government.

Specification 1 of the Charge alleged that the appellant committed an aggravated assault by "digitally penetrating [PFC CI's] vagina with his finger, by causing bodily harm upon her, to wit: touching her vagina with his hand." At trial, the military judge requested input from the parties as to whether wrongful sexual contact was an LIO of the charged offense. Although the trial counsel objected to an instruction on the LIO of wrongful sexual contact, the defense specifically requested the instruction, both in writing and in response to the military judge's question on the subject:

> ADC: [A]s far as the [LIO] under the (sic) Specification 1 . . . I believe that [testimony] puts in issue everything else for the members. They should be allowed to consider the full plethora of the charges, from the most severe to the least, ma'am.

---

[3] The Government also alleged that, while at the party, the appellant unlawfully touched PFC CI's buttocks, as well as the buttocks of another female PFC, forming the basis of the two wrongful sexual contact specifications of which the appellant was acquitted.

3

MJ:  Okay.  All right.  So you do believe that the evidence raises the possibility of . . . wrongful sexual contact . . . under Specification 1?

ADC:  Yes ma'am.  While it may be, you know, far afield, we believe that the members should at least have that option, ma'am.  We don't believe that's actually the way the members may sit, but I do believe the evidence has raised it.

MJ:  Okay.  All right.  I will go ahead then and instruct on [that LIO].[4]

The military judge then instructed the members that wrongful sexual contact was an LIO of the charged offense and that, to find the appellant guilty of the LIO, they must be convinced beyond a reasonable doubt that "the accused engaged in sexual contact, to wit: Touching her vagina with his hand, with [CI]; that such sexual contact was without the permission of [CI]; and That such sexual contact was wrongful."[5]  Following deliberations, the members convicted the appellant of only this LIO.

## Waiver

Under the Fifth and Sixth Amendments to the U.S. Constitution, the accused has the right to "'receive fair notice of what he is being charged with.'"  *United States v. Gaskins*, 72 M.J. 225, 232 (C.A.A.F. 2013) (quoting *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)).  However, while there is a "presumption against the waiver of constitutional rights," *United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F 2008) (citation and internal quotation marks omitted), the appellant may waive the right to raise such issue on appeal provided it is "'clearly established that there was "an intentional relinquishment or abandonment of a known right . . ."'" *id.* (quoting *Brookhart v. Janis*, 384 U.S. 1, 4 (1966) (additional citation omitted)).

"'The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case[.]'" *United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  In this

---

[4] Record at 659.

[5] *Id.* at 667.

case, we have little difficulty concluding that the appellant waived his right to challenge the LIO instruction on appeal. First, we note that the appellant's defense counsel were on ample notice of the issue. Military jurisprudence regarding how to determine LIOs was well-settled at the time of the appellant's trial. *See United States v. Girourd,* 70 M.J. 5,9 (C.A.A.F. 2011) (where the Court of Appeals for the Armed Forces (CAAF) announced that "[i]n determining the whether an offense is an LIO, this court applies the elements test.") Moreover, at the time of trial, the Manual for Courts Martial contained cautionary language that: "[t]he elements of the proposed [LIO] should be compared with the elements of the greater offense to determine if the elements of the lesser offense are derivative of the greater offense[.]" Art 120e, UCMJ (2007).

Finally, the defense specifically requested the LIO instruction over the Government's objection. Knowledge of the settled law regarding LIOs coupled with a specific request for the LIO instruction after discussing the issue on the record convinces us that the appellant waived his right to challenge the LIO instruction on appeal.

## Human Lie Detector

The appellant next claims that the military judge erred by "permitting [Cpl AI] to offer human lie-detector testimony." While we agree that admission of the testimony was obvious error, we hold it was not prejudicial.

The appellant's defense at trial was that PFC CI's allegations were false. The Government called Cpl AI, who testified, *inter alia*, that he and his wife were at the party and sleeping in the bed on the night in question. During cross-examination of Cpl AI, the defense elicited the following testimony implying that Cpl AI doubted his wife's version of events:

> Q: Okay. You don't remember anyone else getting into that same bed with you that night, do you?
> A: No, sir.[6]
>
> . . . .

---

[6] *Id.* at 472.

Q: [S]he didn't tell you the next morning that anything happened that night, did she?
A: No, sir.[7]

. . .

Q: And you initially thought that maybe she imagined it?
A: I just – I was kind of in disbelief.

Q: You thought maybe she dreamed it?
A: Something like that, sir, yes.

Q: The story didn't really make too much sense to you?
A: I just figured that if something like that would have happened then . . . where was I in this . . . [i]f something like that were to happen to me, sir, I would – I would have stopped it or done something, like, instantly, sir.
. . .

Q: [A]t no point after [she told you about the assault], you never went and reported it to anyone, did you?
A: I honestly . . . it's not like I didn't believe her, sir. But it, kind of, it didn't make too much sense to me . . . .

Q: Okay. So you weren't entirely convinced that this happened then?
A: No, sir.

Q: And you told NCIS that?
A: Yes, sir.[8]

On redirect, the following colloquy took place:

Q: Now, you just told the defense counsel that you had your doubts?
A: Yes, sir.

Q: You do believe your wife, though, correct?

_____

[7] *Id.* at 474.

[8] *Id.* at 474-75.

```
A:  I do, sir.

Q:  And she's telling the truth?
A:  She is, sir.

Q:  And why do you think that?
A:  The way . . . that it's affected her, the way that
    she's changed, the way that its affected our marriage
    – the way that its negatively impacted us just as a
    family – we have two kids, we have three dogs, and
    she's just depressed.  And I understand that a mother
    is, obviously, is stressed out from all that,
    especially with me deploying again.  But even on good
    days, she'll just snap sometimes.  And just the way
    that its affected her, something as big as it had on
    her wouldn't have happened over a small situation,
    sir.[9]
```

Neither party objected to the above testimony.  We review a military judge's decision to admit evidence for an abuse of discretion.  *United States v. Kasper*, 58 M.J. 314, 318 (C.A.A.F. 2003).  Where an appellant did not preserve the issue by making a timely objection, that error will be forfeited in the absence of plain error.  *United States v. Knapp*, 73 M. J. 33, 36 (C.A.A.F. 2014) (citing *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007) and MIL. R. EVID. 103 (d)) (additional citation omitted).  Plain error is established if: (1) there was error; (2) the error was clear or obvious; and (3) the error was materially prejudicial to the appellant's substantial rights.  *Knapp*, 73 M.J. at 36.

**A.  There is error**

"Human lie detector testimony" has been defined as "an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case." *United States v. Kasper*, 58 M.J. 314, 315 (C.A.A.F. 2003).  CAAF has been "resolute in rejecting the admissibility of so-called human lie detector testimony[.]"  *Knapp,* 73 M.J. at 36 (internal quotation marks and citations omitted).  This is so since such testimony from a lay witness exceeds the limits of permissible character evidence governed by MIL. R. EVID. 608 (evidence of character, conduct, and bias of witness), exceeds the scope of the witnesses knowledge, in violation of MIL. R. EVID. 701(opinion testimony by lay witnesses), and usurps the fact-finder's

---

[9] *Id.* at 480.

exclusive function to weigh evidence and determine credibility. *See Kasper,* 58 M.J. at 315. "The prohibition applies not only to expert testimony, but also to conclusions as to truthfulness offered by a nonexpert." *Id.* *See also United States v. Petersen*, 24 M.J. 283, 284 (C.M.A. 1987) ("We are skeptical about whether any witness could be qualified to opine as to the credibility of another."). The admission of "human lie detector" testimony is error, regardless of which party offers it.

**B. The error was clear or obvious**

"In determining whether the error was clear or obvious, we look to law at the time of the appeal." *Knapp*, 73 M.J. at 37 (citations omitted). As the law regarding admission of human lie detector testimony is well-settled, this error was clear or obvious. *Id.*[10]

**C. The error was not prejudicial**

An obvious error materially prejudices the substantial rights of the accused when it has "an unfair prejudicial impact on the [court members'] deliberations." *Knapp*, 73 M.J. at 37 (internal quotation marks and citations omitted). Here, we find no such impact.

From legal precedent, we discern several, nonexclusive factors relevant to an assessment of whether "human lie detector" testimony was prejudicial: (1) the role of the Government counsel in initiating or furthering objectionable testimony (*Kasper*, 58 M.J. at 314); (2) the role of the defense counsel, particularly if it appears the defense initiated the testimony for strategic reasons (*United States v. Schlamer*, 52 M.J. 80 (C.A.A.F. 1999)); (3) the defense's failure to object or request cautionary instructions (*United States v. Halford*, 50 M.J. 402 (C.A.A.F. 1999)); (4) whether the witness has been asked for specific conclusions or their opinion about the truth or falsity of another's statements or allegations, or about whether a crime occurred (*United States v. Anderson*, 51 M.J. 145

---

[10] We are aware that the inadmissible opinion testimony originated with the defense during cross-examination. We are also aware of the "invited response" or "invited reply" doctrine, which permits the prosecution to offer comment or testimony as a fair response to claims made by the defense. *See United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005). *See also United States v. Lewis*, 69 M.J. 379, 384 (C.A.A.F. 2011) ("limitation on comments cannot be used by the defense as both a shield and a sword.") (citations omitted). However, this doctrine does not obviate the error.

(C.A.A.F. 1999); *United States v. Birdsall*, 47 M.J. 404 (C.A.A.F. 1998); *United States v. Marrie*, 43 M.J. 35 (C.A.A.F. 1995)); (5) whether the testimony in question is on a central or peripheral matter (*Kasper*, 58 M.J. at 314; *United States v. Robbins*, 52 M.J. 455 (C.A.A.F. 2000); *Birdsall*, 47 M.J. at 404); (6) whether the trial was before members or by military judge alone (*Robbins*, 52 M.J. at 455; *United States v. Raya*, 45 M.J. 251 (C.A.A.F. 1996)); and (7) the remedial action, if any, taken by the military judge. *United States v. Eggen*, 51 M.J. 159 (C.A.A.F. 1999). *See United States v. Jones*, 60 M.J. 964, 969 (A.F.Ct.Crim.App. 2005). While the trial was before members and while Cpl AI was asked specifically whether he believed his wife was lying – the central issue in this case – we are not convinced that the error had an unfair prejudicial impact on the member's deliberations.

First, any prejudice was mitigated by testimony, elicited by the defense, that PFC CI was not truthful. This testimony came in several forms, including: the testimony elicited by the defense from Cpl AI that he initially did not believe his wife; testimony from members of PFC CI's command implying that she had been less than honest about her medical issues while on active duty; and the opinion of SSgt S's that PFC CI's truthfulness was "questionable in nature"[11] and that she had made a "false allegation" of sexual assault against him.[12] Second, we are doubtful that testimony from Cpl CI that he believed his wife had a significant impact on the members' deliberations. Third, the defense, perhaps recognizing its role in the error, neither objected nor requested a curative instruction.

Finally, although the military judge did not "issue prompt cautionary instructions to ensure that the members do not make improper use of such testimony," *Knapp*, 73 M.J. at 36 (quoting *Kasper*, 58 M.J. at 315), she did provide the standard instruction to the members that they had the "duty to determine the believability of the witnesses."[13] For these reasons, we find the appellant was not prejudiced by the erroneous admission of "human lie detector" testimony.

---

[11] *Id.* at 594.

[12] *Id.* at 597.

[13] *Id.* at 676.

9

## Conclusion

The findings and sentence as approved by the convening authority are affirmed.

For the Court


R.H. TROIDL
Clerk of Court