# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class FLOYD C. GUYTON, JR.**
**United States Army, Appellant**

ARMY 20180103

Headquarters, 1st Special Forces Command (Airborne)
Christopher E. Martin, Military Judge
Lieutenant Colonel Scott T. Ayers, Staff Judge Advocate (pretrial)
Lieutenant Colonel Sean G. Gysen, Staff Judge Advocate (post-trial)

For Appellant: Captain Rachele A. Adkins, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig J. Schapira, JA; Captain Brian D. Jones, JA (on brief).

16 December 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

Appellant claims the military judge erred in his rulings regarding the composition of the panel members; the military judge abused his discretion in denying admission of the victim's letter to appellant; and the military judge abused his discretion in granting the admission of an excerpt from appellant's video interview with law enforcement. As we explain below, we find none of these claims merit relief. However, we find the government's unexplained dilatory post-trial

processing of appellant's case warrants reducing his sentence to confinement by four months.[1]

Appellant's case is before this court for review pursuant to Article 66, Uniform Code of Military Justice [UCMJ]. An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape for inserting his finger into his wife's anus, and one specification of larceny of military property, valued under five hundred dollars, in violation of Articles 120 and 121, UCMJ, 10 U.S.C. §§ 920, 921. The convening authority approved the adjudged sentence of a dishonorable discharge, two years of confinement, reduction to E-1, total forfeiture of pay and allowances, and a reprimand.[2]

---

[1] We gave full and fair consideration to appellant's three other assigned errors and find they merit neither discussion nor relief.

[2] Although not specifically raised, we note the military judge failed to instruct the members on the definition of "military property," under Article 121, UCMJ. *See Manual for Courts-Martial, United States* (2012 ed.) [*MCM*], Part IV, ¶ 46c(1)(h); *see also* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ¶ 3-46-1(d) (10 Sep. 2014) [Benchbook] ("'Military property' is real or personal property owned, held, or used by one of the armed forces of the United States which either has a uniquely military nature or is used by an armed force in furtherance of its mission."). Under Article 121, UCMJ, military property is not an element of the offense, but is rather a sentence escalator. *See United States v. Smith*, 49 M.J. 269, 270 (C.A.A.F. 1998). The maximum period of confinement for larceny of military property of a value of five hundred dollars or less is one year. *MCM*, Part IV, ¶ 46e(1)(a). Whereas, the maximum period of confinement for theft of other than military property of a value of five hundred dollars or less is six months. *Id.* at ¶ 46e(1)(b). Appellant was convicted of stealing "approximately [five hundred fifty] rounds of [nine millimeter] ammunition, Lot Number WMA 14E052-001, military property, of a value under [five hundred dollars], the property of the United States Army." Under these circumstances, we will not affirm appellant's conviction of larceny of "military property," valued under five hundred dollars, but will affirm the lesser-included offense of larceny of "non-military property," of a value under five hundred dollars. We are satisfied beyond a reasonable doubt the property appellant was convicted of stealing was owned by and taken from the United States Army. A difference of six months confinement exists between the two offenses. Appellant's penalty landscape does not change because the maximum sentence for appellant's conviction of rape, which is confinement for life without the possibility of parole, remains. In accordance with the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986), and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F.

(continued . . .)

## BACKGROUND

*Appellant's Offenses*

Appellant and his wife, HG, were married for eighteen years. They discussed obtaining a divorce several times throughout the marriage. HG finally decided to divorce appellant around 30 August 2015.

A few days later, on 9 September 2015, appellant and HG had a heated argument in their garage. HG went into their home to sleep in the first-floor master bedroom. HG testified appellant inserted his penis into her vagina without her consent on the bed in the master bedroom. Appellant testified the sexual encounter was consensual.[3]

HG, upset with appellant, departed the first-floor master bedroom. HG told appellant she was going to sleep in their son's bedroom upstairs, as he was not sleeping there. HG testified she went upstairs, entered her son's bedroom, locked the door, and cried herself to sleep. HG testified she awoke to appellant pinning down her legs, and he penetrated her anus with his finger. Shortly after, HG called civilian law enforcement stating appellant raped her. HG went to the emergency room and was treated by a sexual assault nurse examiner (SANE). The SANE identified a fissure on HG's anus that was visible to the naked eye.

Appellant admitted he touched HG's anus, but testified it occurred during the alleged consensual sexual activity in the master bedroom. Appellant admitted sexual activity occurred with HG in their son's bedroom, but denied touching her anus while in his son's bedroom.

Approximately fourteen months later, HG moved to a different state. During the course of her relocation, she discovered government-owned nine millimeter ammunition that appellant had previously brought home during the course of their marriage. She called law enforcement and the ammunition was collected by a military special agent.

---

(. . . continued)
2013), we are confident the panel would have adjudged the same sentence absent the error noted.

[3] Appellant was charged with and acquitted of raping HG in the master bedroom.

*Panel Members*

During group voir dire, the military judge asked the panel members whether they "ever had professional dealings" with any government trial counsel. Two panel members, Lieutenant Colonel (LTC) MB and Command Sergeant Major (CSM) BV, responded in the affirmative. Their affirmative responses were later explored by the parties during individual voir dire of both members.

Lieutenant Colonel MB stated she knew one trial counsel, Captain (CPT) AP, as she was LTC MB's "legal advisor." Lieutenant Colonel MB stated she could be "unbiased" regarding appellant's case despite her relationship with CPT AP. Command Sergeant Major BV stated CPT AP was his unit's legal advisor and he had previously received legal advice from her on command issues. The trial counsel asked CSM BV whether he would "[b]e more receptive to the arguments and the evidence that [CPT AP] was presenting versus the other side just solely based on that relationship." Command Sergeant Major BV responded "I have been in my current position for about [forty-five] days. So, although I completely respect, you know, her job and her ability to do her job, I haven't built that relationship yet . . . ." Neither LTC MB nor CSM BV was challenged for cause by the parties based on their relationship with CPT AP.[4]

After the parties requested, and the military judge granted one challenge for cause and two peremptory challenges, a nine-member panel was formed encompassing LTC MB and CSM BV. The trial then proceeded with opening statements and the government's witnesses. It was only revealed after the entire presentation of the government's case-in-chief, that LTC MB had made statements at a command meeting earlier in the week regarding her participation as a potential member in an upcoming court-martial and CPT AP.

After arriving at the courthouse to testify as a defense witness, Master Sergeant (MSG) JR, notified defense counsel he had heard LTC MB make comments at a command team meeting, consisting of ten to twelve people including CSM BV, but not CPT AP. Specifically, MSG JR testified he heard LTC MB state "[s]he was going to wear . . . either a necklace or a sign that said that [CPT AP] is my favorite prosecutor," at an upcoming court-martial.

---

[4] Command Sergeant Major BV was challenged for cause by the government on unrelated issues. The military judge denied the government's challenge of CSM BV based on the defense objection to his removal.

4

A brief individual voir dire of LTC MB ensued in which she confirmed "I did say something like that," but "I was joking . . . . [I] was teasing. I didn't mean it . . . ." Lieutenant Colonel MB was then dismissed and returned to the panel member deliberation room. The military judge did not advise LTC MB not to discuss with the other panel members the reason she was called for individual voir dire in the middle of trial.

Next, CSM BV was called for individual voir dire regarding LTC MB's comments. The following exchange occurred:

> Q. What was your perception of [LTC MB's] statement or the context of that statement being made?
> A. At about that time . . . I made a comment that we needed to go. That was my reaction to the comment.
> Q. And why did you make that comment?
> A. It was a - - I think she meant it as a joke . . . . [B]ut I had a feeling that it wouldn't be perceived as a joke.
> Q. And did that comment affect your perception of [CPT AP]?
> A. No . . . .

Defense counsel then challenged LTC MB for cause, but did not challenge CSM BV. The military judge granted the challenge against LTC MB "[o]n, at least, the basis of implied bias." The military judge also considered sua sponte, even in the absence of a defense challenge, whether CSM BV should remain as a panel member. In deciding to allow CSM BV to remain, the military judge noted CSM BV acknowledged hearing her comment, he took action to leave the meeting, and "[m]ost importantly, he clearly stated that that statement has had no impact on his view of [CPT AP.]"

The parties then requested additional individual voir dire of both members to determine if they further discussed the comment with each other or the other panel members. Lieutenant Colonel MB said the only other discussion about the comment had just occurred because the other panel members asked her why she had been "pulled in here by myself." She reiterated that her comment was "flippant;" it was "[o]bviously in bad taste;" "I should not have said that;" and "I was just teasing." Command Sergeant Major BV testified LTC MB told the other panel members "[h]ow embarrassed she was and she was just making a joke and, you know, she didn't expect that this, sort of, thing would've occurred from a comment that she had made earlier in the week."

In light of all panel members being informed of LTC MB's comments, the military judge then conducted individual voir dire of all the members. Each member stated nothing regarding LTC MB's comments made them more

favorably inclined toward the government or less favorably inclined toward the defense. The military judge instructed all panel members to disregard LTC MB's comment, and all members agreed to do so. The defense then made a motion for a mistrial because of the alleged implied bias of the entire panel, but did not expressly challenge any particular member for cause.

In denying the defense mistrial motion, the military judge found "[t]here's no indication those comments have any impact on any member of the panel that remains," and "[e]ach of them credibly and openly [stated they were] willing to commit to the fact that this will not impact them in any way." Later in the trial, the military judge reiterated that he found "[n]o reason to find any bias of any panel member that currently sits *implied* or otherwise." (emphasis added).

### *2014 Valentine's Day Letter*

The military judge did not admit a defense exhibit containing a two-page hand-written letter drafted by HG on Valentine's Day 2014. The letter is best described as a roller coaster of varied thoughts and emotions regarding HG's entire relationship with appellant. During cross-examination, defense counsel began to question HG about the letter. The government objected to the questions on hearsay grounds. The defense asserted the letter contained HG's state of mind as to the marriage at the time of the letter's making. The military judge then allowed the defense to continue cross-examination regarding the letter.

Eventually, the defense counsel moved to admit the letter into evidence. The government objected stating "[i]t's an out-of-court statement . . . being offered for the truth of the matter." Defense counsel responded the letter showed "[HG's] state of mind." The military judge ruled to exclude the letter's admission into evidence as cumulative and likely to confuse the issues under Military Rule of Evidence [Mil. R. Evid.] 403. The defense did not request to admit the letter under Mil. R. Evid. 608(c) or even utter the generic words "bias" or "impeach."

During the defense's case-in-chief, appellant attempted to testify about the letter's contents. The government again objected to the letter on hearsay grounds. The defense reiterated, "[w]e are offering [the letter] to demonstrate the state of mind of [HG] at the time when she wrote this letter [as] to the state of their marriage." The military judge again sustained the government objection to the letter under Mil. R. Evid. 403. The military judge ruled the probative value of the letter was low stating, "[a]lthough portions of [the letter] may be relevant to [HG's] state of mind . . . it's [not] close enough in place and time to be relevant in terms of admitting the letter itself." Again, the defense did not attempt to admit the letter under Mil. R. Evid. 608(c), or even utter the generic words "bias" or "impeach."

6

*Video of Appellant's Law Enforcement Interview*

On the same day appellant raped his wife, appellant conducted an approximate ninety-minute video-recorded interview with Detective JB from a local civilian law enforcement agency. At trial, the government moved to admit an approximate fifteen to twenty second clip of the video, marked as Prosecution Exhibit (PE) 28. This excerpt consists of Detective JB telling appellant that HG "mentioned something about anal," and appellant responding "I dabble down there," while pointing to his index finger. The defense then asked the military judge to admit the entire interview.

The military judge advised that the defense could introduce the entire interview if the video was redacted to exclude inadmissible references to a polygraph examination. The military judge allowed the government to admit PE 28, stating "[I] don't want to take an hour and half or whatever recess to do that now . . . . [a]nd Defense, you basically have until whenever you rest, up until that time, to ensure the statement is appropriately edited and available to introduce if you wish to do that. And obviously, any reference to the polygraph needs to be excerpted [sic] as well as anything that's not relevant." Despite the military judge's ruling, the defense did not attempt to introduce a redacted video.

*Appellant's Post-Trial Delay*

After the adjournment of appellant's trial, the government took over thirteen months to authenticate the record of trial. Appellant's trial defense counsel submitted six written requests for speedy post-trial processing within this period. The addendum to the Staff Judge Advocate's Recommendation (SJAR) acknowledged the "post-trial processing was excessive," "violated the *Moreno* timeline," and under the circumstances, "clemency may be appropriate."

**LAW AND DISCUSSION**

*A. Panel Members*

Appellant's challenge to the panel composition is three-fold. First, appellant challenges the military judge's failure to sua sponte excuse CSM BV for implied bias due to his presence at the command meeting when LTC MB commented on CPT AP. Second, appellant claims the military judge should have excused CSM BV when the the defense requested a mistrial due to LTC MB telling all the panel members, including CSM BV, about her comment. Third, appellant asserts the military judge abused his discretion in not granting a

mistrial because the entire panel knew about LTC MB's comment regarding CPT AP.[5] We disagree and find no abuse of discretion.

Appellant's challenges to the panel composition all claim implied bias. Appellant argues the military judge applied the wrong standard in considering the issue of implied bias. Specifically, appellant asserts the military judge "applied the test for actual bias, focusing not on public perception, but on the actual impact on the panel members." We disagree. Implied bias was the focus of LTC MB's excusal. The defense argued LTC MB's comment created an appearance to the "objective onlooker" that she was no longer a fair and impartial panel member. The military judge agreed and explicitly stated that he was excusing LTC MB for implied bias. *See United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) ("Military Judges are presumed to know the law and to follow it absent clear evidence to the contrary.") (citation omitted).

Even if the military judge applied the wrong standard, we find under our de novo review that the record does not support a finding of implied bias.

### 1. Command Sergeant Major BV

Turning first to CSM BV, we note a military judge may sua sponte, "in the interest of justice," excuse a member against whom a challenge for cause would lie, even if neither party has raised such a challenge. Rule for Courts-Martial [R.C.M.] 912(f)(4); *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). However, the military judge's decision to exercise his sua sponte authority to excuse a panel member is discretionary, and he has no duty to do so. *See United States v. Akbar*, 74 M.J. 364, 395 (C.A.A.F. 2015) (citing *United States v. McFadden*, 74 M.J. 87, 90 (C.A.A.F. 2015)).

Rule for Courts-Martial 912 (f)(1)(N) states "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule encompasses both actual and implied bias. *Strand*, 59 M.J. at 458. "Implied bias is an objective test, 'viewed through the eyes of the public, focusing on the appearance of fairness.'" *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (citing *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)). A court reviews the totality of the circumstances to determine if "most people in the same position would be

---

[5] We address appellant's argument the military judge erred in denying defense's motion for a mistrial jointly with appellant's argument CSM BV should have been removed once defense motioned for a mistrial.

[biased]." *Strand*, 59 M.J. at 459 (quoting *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000)). A military judge's rulings on implied bias challenges for cause are "reviewed under a standard less deferential than abuse of discretion, but more deferential than de novo." *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)). As stated above, we conduct a de novo review of the military judge's implied bias rulings in appellant's case.

The crux of appellant's argument regarding CSM BV is that he was not forthcoming when questioned by the military judge regarding LTC MB's comment about CPT AP. We disagree. The exchange between the military judge and CSM BV went as follows:

> Q. Do you recall attending a . . . commander's huddle on Monday?
> A. We went to the battalion headquarters. Yes . . . .
> Q. Do you recall if [LTC MB] was at that meeting?
> A. She was . . . .
> Q. Do you recall any comments made by her in reference to this trial?
> A. Other that the fact that we were not excused [?]
> Q. Do you recall any comments she may have made about [CPT AP]?
> A. I think she said something to the effect of, she thought she would be excused based on the government's attorney.
> Q. Do you recall any comment by [LTC MB] . . . to the effect of I will wear a sign around my neck saying that [CPT AP] is my favorite prosecutor?
> A. Yes . . . .

Appellant faults CSM BV for not immediately referencing LTC MB's comment about CPT AP in response to the military judge's question whether "[CSM BV] recall[ed] any comments made by [LTC MB] in reference to the trial." We find that is a mischaracterization of the record. The military judge initially asked a very broad question about any comments LTC MB made at the meeting. We are not surprised CSM BV was not able to perceive precisely what information the military judge was seeking. However, the military judge asked very specific follow-up questions regarding LTC MB's comment about CPT AP. To those questions, CSM BV candidly and completely responded to the military judge regarding his recollection of LTC MB's comment. We note that no party at trial, including the defense, mentioned any concern regarding CSM BV's credibility. The defense did not object to the military judge's findings of fact that CSM BV acknowledged hearing the comment; he took immediate action; and he stated the comment would

not impact his view of CPT AP. Thus, we do not find the record supports a finding that CSM BV lacked candor.

In sum, CSM BV unequivocally stated LTC MB's comment did not impact his view of CPT AP. Also, the defense expressly stated it did not want to challenge CSM BV at that point. Under these circumstances, we find an objective member of the public would not question CSM BV's impartiality. Thus, the military judge did not abuse his discretion in not taking the "drastic action" of sua sponte excusing CSM BV. *United States v. Velez*, 48 M.J. 220, 226 (C.A.A.F. 1998).

### 2. *Motion for Mistrial*

Next, we turn to appellant's claim the military judge should have granted the defense's motion for a mistrial because the entire panel was impliedly biased due to LTC MB's comment. We also address appellant's renewed argument that the military judge should have removed CSM BV after the defense moved for a mistrial. We review a military judge's decision to deny a request for mistrial for an abuse of discretion. *United States v. Harris*, 51 M.J. 191, 196 (C.A.A.F. 1999). A mistrial is "a drastic remedy which should be used only when necessary to prevent a miscarriage of justice." *Id.* at 196.

As an initial matter, we agree with LTC MB that her comment was in "bad taste" and she should not have said it. However, LTC MB was excused from the panel and all that remains to be determined is whether her comment injected implied bias into the rest of the panel. For several reasons, we determine it did not.

First, as the military judge noted, LTC MB's comments "were not made about [appellant] or even about [appellant's] case in particular." Lieutenant Colonel MB's comment did not indicate that she had already formed an opinion about appellant's case. Although LTC MB's excusal was certainly warranted, her comment was not so prejudicial that an objective member of the public would view it as tainting the entire panel.

Second, the context of LTC MB's comment is important. With the exception of CSM BV, the panel members heard the comment in the context of her explaining why she had been called individually into the courtroom. In other words, LTC MB did not make the comment to the panel members to influence their opinion. She was merely recounting what had just transpired. *See Smith v. Phillips*, 455 U.S. 209, 317 (1982) ("Due process does not require a new trial every time a juror has been placed in a potentially compromising situation").

Most importantly, the military judge conducted individual voir dire of every member. Each member, including CSM BV, using their own words, tone, and demeanor, indicated that LTC MB's comment did not impact their view of CPT AP. *See Downing*, 56 M.J. at 422 (C.A.A.F. 2002) (a military judge's "[o]observations[s] of the members' demeanor may inform judgments about implied bias"). Each panel member, including CSM BV, agreed to disregard LTC MB's comment. *See United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014) ("[a]bsent evidence to the contrary, court members are presumed to comply with the military judge's instructions"). We note the defense never challenged the military judge's findings regarding each member's lack of actual bias. *See United States v. Youngblood*, 47 M.J 338, 341 (C.A.A.F. 1997) (a member's unequivocal statement of a lack of bias can carry weight when considering the application of implied bias); *see also United States v. Warden*, 51 M.J. 78, 81-82 (C.A.A.F. 1999) (noting "when there is no actual bias, implied bias should be invoked rarely").

After conducting a de novo review of the totality of the circumstances of appellant's case, we find a reasonable member of the public, sitting in the courtroom and hearing the members' responses, would not harbor a substantial doubt as to the fairness of appellant's court-martial. *See Strand*, 59 M.J. at 459-60. Furthermore, we do not view appellant's trial as one of the "extraordinary" cases necessitating a mistrial to prevent a miscarriage of justice. *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009). The military judge's remedial measures obviated the need for a mistrial. We recognize the military judge maintained control over the proceedings. The military judge took corrective action by conducting individual voir dire of the entire panel and gave proper curative instructions to each member to disregard LTC MB's comment. *See Harris*, 51 M.J. 191, 197. Accordingly, a mistrial was not an appropriate remedy.

*B. 2014 Valentine's Day Letter*

Appellant claims the military judge abused his discretion in refusing to admit HG's 2014 Valentine's Day letter to appellant. Appellant argues this letter demonstrated HG's "state of mind reflecting bias against appellant and [HG's] plan to destroy the relationship if if did not improve." We conclude the military judge did not abuse his discretion in refusing to admit the letter.

"A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. An abuse of discretion occurs when a military judge erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (internal citations and quotation marks omitted).

Hearsay is generally inadmissible. Mil. R. Evid. 802. Military Rule of Evidence 801(c) defines hearsay as a statement, other than the one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. A statement that is not offered to prove the truth of the statement's content is not hearsay and is not prohibited by the rule against hearsay. The prohibition on hearsay is also subject to many exceptions. *See* Mil. R. Evid. 801(d), 802, 803, 804, 807.

In relevant part, Mil R. Evid. 803(3) makes an exception to the rule against hearsay for the following:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Although hearsay may fall under an exception, like all evidence, it is subject to the balancing test of Mil. R. Evid. 403.[6] A military judge enjoys "wide discretion in applying Mil. R. Evid. 403. *United States v. Sullivan*, 42 M.J. 360, 363 (C.A.A.F. 1995). "Ordinarily, appellate courts exercise great restraint in reviewing a judge's decisions under [Mil. R. Evid. 403]." *United States v. Harris*, 46 M.J. 221, 225 (1997) (internal citation and quotation marks omitted). When a military judge articulates his properly conducted Mil. R. Evid. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

We have closely reviewed the two-page letter, handwritten in purple pen, on Valentine's Day 2014, over five hundred and seventy days before appellant anally raped HG on 10 September 2015. The letter starts by discussing the beginning of the relationship, then seventeen years prior, and transitions to the relationship's alleged outcome as being, in HG's mind, like a "Garth Brooks'" song.[7] One section

---

[6] "The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403.

[7] From approximately 1989 through 1992, Garth Brooks produced several number one songs and the best-selling country album up to that time. *See* Bill C. Malone & Tracy E. W. Laird, Country Music 501 (The University of Texas Press 2018). "[B]y

(continued . . .)

of the letter discusses their relationship dissolving and HG's knowledge that appellant was "gone over [two] years ago [in 2012]," and "[i]t's for the best to let go because [appellant's] path no longer includes [HG]." Later in the letter, HG contemplates the possibility of reconciliation stating, "[HG] will continue to hope that as [appellant's] time here draws to a close, that [appellant] will change [his] direction and realize [he] can't live without [HG]." The letter is signed: "Happy Valentine's Day," then has a drawn heart shape, Love, [HG], and finally ends with a drawn smiley face.

Under the letter's Merry-Go-Round backdrop of relationship highs, lows, and possible outcomes, the defense argues it was error for the military judge to not admit the entirety of the letter. Now on appeal, defense asserts the section below indicates HG's bias and motive to fabricate false allegations of rape against her husband:

> I have to break that hope [of being together and] throw it away. I told you that's what I do when I need to throw something away that I'm having a hard time doing so with. I break the hell out of it so it is no longer useful. I know that I need to throw away my hope [and] I can't make it break, so we need to find a solution. I love you [and] because of that I don't want to do what I know what I will do if I continue to see you every day and hold onto that empty hope. I will destroy any relationship we have so that I don't have to hope anymore that it will be better.

First, we discuss the admission of the entirety of the letter under the theory asserted by defense at trial—that it constituted a present sense impression and qualified as a hearsay exception under Mil. R. Evid. 803(3). The military judge found "some parts but not all parts" of the letter discussed HG's state of mind. Much of the letter does not contain HG's present sense impressions but instead reflects upon the past and contemplates the future. This alone warrants the preclusion of the entire exhibit as a hearsay exception under Mil. R. Evid. 803(3). The military judge did not abuse his discretion excluding the entirety of the letter.[8]

---

(. . . continued)
1996, Brooks' accomplishment of over sixty million album sales had been surpassed only by the Beatles and Billy Joel, but he had achieved his spectacular figure more rapidly than any other artist in any field of music." *Id.* at 502.

[8] We recognize Mil. R. Evid. 613(b) as a possible alternate theory to admit the letter, but it was not explored by defense. Military Rule of Evidence 613(b) permits "[e]xtrinsic evidence of a witness' prior inconsistent statement . . . if the witness is given an opportunity to explain or deny the statement and an adverse party is given

(continued . . .)

Further, the defense counsel did not seek to redact the letter to encompass only the present sense impressions contained therein.

Although we find the military judge did not abuse his discretion in precluding the admission of the entire letter under Mil. R. Evid. 803(3), we further discuss his ruling to preclude its admission under Mil R. Evid. 403 because the letter was cumulative, likely to "confuse the issues," and possessed low, if any, probative value due to the time difference between its making and when HG reported the rape. *See United States v. Mann*, 54 M.J. 164, 166 (C.A.A.F. 2000) (holding "[w]hen a military judge conducts a proper balancing test under Mil. R. Evid. 403, the evidentiary ruling will not be overturned unless there is a 'clear abuse of discretion'").

The defense sought the substantive admission of the entire letter. In other words, the defense requested the contents of the letter to be considered for the truth of the matter asserted. But, what was the substantive meaning of the words the defense sought to admit? Our plain review of the actual language, and its context within the four corners of the entire exhibit, does not lead us to agree with the defense's alleged theory that HG intended to make future false allegations of rape against appellant. Our interpretation of HG's phrases "destroy any relationship" or "break the hell out of," more clearly indicate an intent to obtain a divorce.

The defense cross-examined HG regarding her intent and whether she intended to "destroy" or "break the hell out of" the relationship. She denied wanting to "break the hell out of" the relationship, but testified that she instead wanted to break the hope the relationship would continue. HG testified that her state of mind while writing the letter was the "relationship was broken," and "[t]he reason I was leaving and writing . . . was because I did not want it to get to the point where I

---

(. . . continued)
an opportunity to examine the witness about it, or if justice so requires." Defense's proffered reason to admit the letter was to prove the truth of the matter asserted— that HG was biased and possessed a motive to fabricate. Admission of an extrinsic exhibit under Mil. R. Evid. 613(b) is not for the truth of the matter asserted but serves an alternate purpose to show the witnesses' current in-court testimony is contradicted by a prior statement. *See* Benchbook, para. 7-11-1. The rule addresses a witnesses' truthfulness in testifying and does not serve to address whether the prior statement stands for the truth of the asserted matter. *See United States v. Palmer*, 55 MJ 205, 208 (C.A.A.F. 2001) (holding if defense counsel have more than one theory of admissibility, it is "incumbent on him to alert the military judge on [all] theories . . . .").

would do something to ruin any chance of us ever being able to be friends or anything of that matter."

Any possible generic bias or motive to fabricate HG may have had against appellant because the relationship was broken and a divorce loomed was clearly established by the defense's cross-examination. The more specific defense assertion that the letter evidenced some higher level of bias and HG's future intent to make a false rape allegation nineteen months in the future is, from our review, tenuous, and overbroad. After, reviewing the actual language, placing it within the context of the entire letter, and the author's proffered explanation, which was consistent with the letter's generic context, we do not agree with the defense's wishful interpretation.

Despite the context of the letter and HG's explanation as to the meaning of the ambiguous language "destroy any relationship" and "break the hell out of," we consider the letter's probative value. To the extent the language could be interpreted to support the defense premise that HG did intend to make future false rape allegations, we, as did the military judge, find any probative value as to HG's alleged intent on 14 February 2014, to be far removed from the date of the reported rape, 10 September 2015.

Even, assuming arguendo, the military judge abused his discretion by precluding the admission of the entire letter under both Mil. R. Evid. 803(3) and Mil. R. Evid. 403, the exhibit's exclusion did not have "a substantial influence on the findings." *United States v. Frost*, 79 M.J. 104, 111 (C.A.A.F. 2019). In conducting this prejudice analysis, we weighed the following: (1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the evidence; and (4) the quality of the evidence in question. *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2020) (internal quotation marks and citations omitted).

Our consideration of the *Kohlbek* factors focuses especially on the low materiality and quality of the letter. During the cross-examination of HG, the defense explored and established the evidentiary value of the exhibit as to HG's bias and motive to fabricate because the relationship was broken and a divorce loomed. This allowed the defense to argue to the panel that HG made a false rape allegation. Both HG and appellant testified to the ebb and flow of their relationship from February 2014 to September 2015, further diminishing the probative value of the letter's content by other relevant and timelier events in between. The defense argument that the letter somehow evidences a more heightened motive to fabricate a future rape allegation is dubious. Even if that meaning could have been discerned, the other non-relevant and confusing portions of the letter, combined with the significant time lag between the creation of the letter and when HG reported the

rape, renders the probative value of admitting the entire letter, if any, extremely low.[9]

### C. *Video Recording of Appellant's Law Enforcement Interview*

Appellant asserts the military judge erred in admitting PE 28, a short segment of appellant's video interview with law enforcement, in contravention of the rule of completeness. At trial, the defense objected to the admission of the video under Mil. R. Evid. 304(h). Now, for the first time on appeal, appellant asserts his defense counsel also objected under Mil. R. Evid. 106. We find, after a complete review of the record, appellant's defense counsel did not object under Mil. R. Evid. 106.

There are two distinct rules of completeness. *United States v. Rodriguez*, 56 M.J. 336, 339 (C.A.A.F. 2002). Military Rule of Evidence 106, the general rule of completeness provides as follows:

---

[9] We pause to address appellant's assertion that his trial defense counsel sought admission of HG's letter under Mil. R. Evid. 608(c), which allows "[b]ias, prejudice, or any motive to misrepresent [to] be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." We conclude the defense did *not* offer the letter under this rule. The defense did not specifically mention Mil. R. Evid. 608(c), or use the generic word "bias" or "impeach" as grounds for admission. Appellant concedes in his reply brief to this court that his "defense [counsel] didn't specifically say [impeach or Mil. R. Evid. 608(c)]." Appellant asserts his counsel "didn't need to" because the military judge "should have been aware" and discerned the defense reason to admit the letter from either the defense opening statement that HG was a "'vengeful, spiteful, and angry wife,'" or from the cross-examination questions the defense posed to HG. We strongly disagree a military judge's role includes sua sponte interjecting, based on counsel's opening statement and cross examination questions, a rule to admit evidence on counsel's behalf, when that counsel specifically, or in this case generically, fails to assert the rule. We pause to recognize a general theory of relevance is always necessary, under Mil. R. Evid. 401, for the admission of any evidence. The defense general theory of relevance, under Mil. R. Evid. 401, that the letter showed HG's state of mind as to marriage, does not serve to trigger the more narrow Mil. R. Evid. 608(c). Again, even assuming the defense tangentially raised Mil. R. Evid. 608(c) as a theory of admissibility, we find the military judge properly excluded the evidence under Mil. R. Evid. 403. Furthermore, we find any error harmless beyond a reasonable doubt because the defense was still able to present its theory that HG fabricated the rape out of revenge and spite. *See United States v. Moss*, 63 M.J. 233, 239 (C.A.A.F. 2006).

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time.

Military Rule of Evidence 106 may be invoked by either the prosecution or the defense. "The primary concern of [Mil. R. Evid. 106] is the order of proof, permitting an adverse party to compel the introduction of favorable evidence during the opponent's case." *See Rodriguez*, 56 M.J. at 340 (internal quotation marks and citation omitted). In other words, "the rule permits one party to require another party to introduce more evidence than the latter desires, or have the latter's case interrupted so that the additional evidence can be introduced." *Id.* (internal quotation marks and citation omitted).

Meanwhile, Mil. R. Evid. 304(h) applies specifically to confessions or admissions. Pursuant to Mil. R. Evid. 304(h), "[i]f only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement." Our Superior Court in *Rodriguez* identified four components of Mil. R. Evid. 304(h), to be contrasted with Mil. R. Evid. 106:

> First, [Mil R. Evid. 304(h)] applies to oral as well as written statements; [second, the rule] governs the timing under which applicable evidence may be introduced by the defense; [third, the rule] permits the defense to introduce the remainder of a statement to the extent that the remaining matter is part of the confession or admission or otherwise is explanatory of or in any way relevant to the confession or admission, even if such remaining portions would otherwise constitute inadmissible hearsay; and [fourth, the rule] requires case-by-case determination as to whether a series of statements should be treated as part of the original confession or admission or as a separate transaction or course of action for purposes of the rule.

56 M.J. at 341-42.

In our review of the record, we conclude the defense sought admission of the remainder of appellant's recorded interview under Mil. R. Evid. 304(h), and not Mil. R. Evid. 106. Our conclusion is based on the following portions of the record provided below.

Initially, the defense lodged an objection to PE 28 because it contains:

> [o]ne reference to the anal elements of the case and at various points during the interview, there is further discussion of that which is not included in that [fifteen-second] portion in which Detective [JB] explains to [appellant] the allegations that were made by [HG] such as, he says that she described it as if he put his whole fist up her anus. And there's discussion about that. . . . [A]nd those [portions of the video] are in no way discussed in the [fifteen-second] segment that [the government] pulled out [in PE 28]. So it's just going in and picking and choosing what [the government] like[s] and what they don't like and allow[ing] something to be taken out of context in the course of a regular conversation.

Within this lengthy argument, the defense never mentioned the rule of completeness. Based on this failure, the military judge then directly asked the defense if it was seeking to "admit the entire *statement* under the rule for completeness?" (emphasis added). The defense merely responded, "Yes, sir." The military judge then ruled the government could admit PE 28 but provided the defense with the option to introduce the entire video, absent polygraph examination references, and "anything that's not relevant. . . . [t]o whatever matter that [the defense was] seeking to round out based on that [fifteen-second] *admission*, if it were an *admission*." (emphasis added).

The military judge's entire analysis and ruling squarely aligned with Mil. R. Evid. 304(h). The ruling permitted the defense "by cross-examination or otherwise [to] introduce the *remaining portions of [a] statement*" if the government introduced "only part of an alleged *admission*" by appellant. (emphasis added) We pause to highlight the military judge twice stated the word "admissions," which is found in Mil. R. Evid. 304(h), but not Mil. R. Evid. 106, and directed the exact resolution provided solely by Mil. R. Evid. 304(h).

As further indicia that the defense did not raise a Mil. R. Evid. 106 objection, we note the military judge's ruling is devoid of any Mil. R. Evid. 106 language or analysis. Military Rule of Evidence 106 would have required the military judge to consider whether the defense proposed version of the video needed to be simultaneously admitted with PE 28. The military judge's ruling only addressed "if the edited version [of the video] isn't ready now," then the defense has "until the close of [the defense] case to edit it and present it as necessary." Even when presented with the military judge's very clear ruling that the government could admit PE 28 without contemporaneously admitting the defense requested portion of the video, the defense did not invoke Mil. R. Evid. 106. The defense did not inquire why the military judge failed to provide his analysis under Mil. R. Evid. 106 as to

whether "in fairness" the defense exhibit "ought" to be considered at the same time. In fact, appellant concedes in his brief to this court that the defense "did not specifically invoke Mil. R. Evid. 106" at any time.

In response to the military judge's ruling, the defense instead specifically lodged an objection under Mil. R. Evid. 403 to the proposed exhibit not being admitted at the same time as PE 28. The defense argued the admission of PE 28 did not "pass the [Mil. R. Evid. 403] balancing test of being more probative than prejudicial" in terms of "being presented to the panel without that additional context provided. Fifteen seconds from that long of a video doesn't provide enough information, doesn't provide enough context for the panel members to understand."

Although the above excerpts in the record aid our conclusion that the defense did not raise a Mil. R. Evid. 106 objection, the below portion of the record, to use a colloquial phrase, is "the nail in the coffin."

After defense objected under only Mil. R. Evid. 403, the government responded. For the first time a specific rule of completeness is uttered; that being Mil. R. Evid. 304(h). The government stated "in terms of the rule of completeness under [Mil. R. Evid.] 304(h) . . . it says, if only part of [an] alleged *admission* or confession is introduced against the accused, the defense by cross-examination or otherwise may introduce the remaining portion of the *statement*." (emphasis added). The military judge immediately responded stating, "[d]efense, I am going to allow that." At that point, the defense was on notice that only Mil. R. Evid. 304(h) was specifically cited, and it was clear the military judge only analyzed and granted relief under Mil. R. Evid. 304(h). Again, the defense failed to state its objection included the rule of completeness under Mil. R. Evid. 106.[10] We ask why the defense would yet again fail to notify the military judge and the government that his rule of completeness objection was also being asserted under Mil. R. Evid. 106?

---

[10] In the absence of a defense request, the military judge is not required to decipher which rule of completeness the defense is invoking. *Rodriguez*, 56 M.J. at 343. Even if we assume, arguendo, the defense raised a Mil. R. Evid. 106 objection, the rule requires any remaining portion of the statement only be admitted at the same time as the government exhibit, if "in fairness [it] ought to be considered." Mil. R. Evid. 106. We find the military judge did not abuse his discretion in failing to rule that an unredacted, ninety-minute video, containing inadmissible references to a polygraph examination and other irrelevant information, "ought" to have been admitted in its entirety "at the same time" "in fairness" to the defense to clarify an approximate fifteen-second government video clip.

Our answer is succinct—the defense was not raising an objection under Mil. R. Evid. 106.

In conclusion, we hold the military judge did not abuse his discretion by admitting PE 28 because: (1) the defense did not raise a Mil. R. Evid. 106 objection; and (2) the military judge granted a defense favorable ruling under Mil. R. Evid. 304(h), authorizing the introduction of any relevant portions of the statement, an option the defense failed to invoke.[11]

### D. Post-Trial

This court has two distinct responsibilities in addressing post-trial delay. *United States v. Simon*, 64 M.J. 205, 207 (C.A.A.F. 2006) (citing *Toohey v. United States*, 60 M.J. 100, 103-04 (C.A.A.F. 2004)). First, as a matter of law, this court reviews whether claims of excessive post-trial delay resulted in a due process violation. *Id.* (citing U.S. Const. amend. V; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 38 (C.A.A.F. 2003)). Second, we may grant an appellant relief for excessive post-trial delay using our broad authority of determining sentence appropriateness under Article 66, UCMJ. *Id.* (citing *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002)).

We review de novo whether appellant has been denied his due process right to a speedy post-trial review. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F 2006). A presumption of unreasonable post-trial delay exists when the convening authority fails to take action within one hundred twenty days of completion of trial. *Id.* at 142. In *Toohey v. United States*, our Superior Court adopted the following four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972), which we employ when a presumption of unreasonable post-trial delay exists, to determine whether the post-trial delay constitutes a due process violation: "(1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to the appellant." 60 M.J. at 102. In assessing the fourth factor of prejudice, we consider three sub-factors: "(1) prevention of oppressive

---

[11] Having found the military judge did not err, we pause to discuss any alleged prejudice to appellant from the admission of PE 28. Defense successfully cross-examined Detective JB by eliciting statements appellant made during the course of his entire interview. During the defense's case-in-chief, appellant testified and provided context for the statements he made to Detective JB in PE 28. Appellant testified that he touched HG's anus. Appellant did not argue that the touching did not occur, but proffered it was either consensual or the defense of mistake of fact as to consent applied. Under these circumstances, the prejudice to defense, if any, in the admission of PE 28, without the defense proffered exhibit, was extremely low.

20

incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno,* 63 M.J. at 138-39 (quoting *Rheuark v. Shaw,* 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

At bar, the government concedes the first three *Barker* factors weigh in appellant's favor.[12] In analyzing the fourth factor of prejudice, however, we may find "a due process violation only when, in balancing the other three [*Barker*] factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey,* 63 M.J. at 362. Under these facts, we do not find the post-trial delay in appellant's case so egregious that he was denied his due process rights under *Moreno.*

We do find, however, that this is an appropriate case to exercise our authority to grant relief under Article 66, UCMJ. *See Tardif,* 57 M.J. at 224. Having considered the entire record, the lack of any adequate explanation by the government as to its inaction, the recommendation in the addendum to the SJAR to grant relief, and appellant's six written demands for speedy post-trial review, we find he is entitled to relief. We reduce appellant's sentence to confinement by four months.

## CONCLUSION

Specification 1 of Charge II, excepting the words "military property," is AFFIRMED. The remaining findings of guilty are AFFIRMED.

We affirm only so much of the sentence as provides for a dishonorable discharge, twenty months of confinement, reduction to E-1, forfeiture of all pay and allowances, and a reprimand. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BURTON and Judge RODRIGUEZ concur.

---

[12] Of the four hundred eighty-one days of delay from the adjournment of appellant's court-martial to convening authority action, the defense received a twenty-day extension to submit matters pursuant to R.C.M. 1105. There is no adequate explanation by the government for the lengthy post-trial delay, especially in light of appellant's six written demands for speedy post-trial processing.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court