# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40171**

————————————

**UNITED STATES**
*Appellee*

v.

**Ryan PARINO-RAMCHARAN**
First Lieutenant (O-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 July 2023

————————————

*Military Judge*: Elizabeth M. Hernandez.

*Sentence*: Sentence adjudged on 28 April 2021 by GCM convened at the federal courthouse in Enid, Oklahoma. Sentence entered by military judge on 18 May 2021: Forfeiture of $2,000.00 pay per month for 3 months and a reprimand.

*For Appellant*: William E. Cassara, Esquire; Julie C. Haines, Esquire.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Major Morgan R. Christie, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge ANNEXSTAD and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone found Appellant guilty, contrary to his pleas, of one specification of using lysergic acid diethylamide (LSD) in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to forfeiture of $2,000.00 pay per month for three months and a reprimand. The convening authority provided the adjudged reprimand but otherwise took no action on the findings or sentence.

On 14 September 2021, a designated judge advocate completed a review of the record of trial pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d). The judge advocate found "[t]he findings and sentence are correct in law and fact."

On 23 November 2021, pursuant to Article 69, UCMJ, 10 U.S.C. § 869, Appellant submitted an application requesting The Judge Advocate General (TJAG) set aside the findings and sentence on two grounds: (1) the military judge abused her discretion by failing to suppress Appellant's statements to law enforcement for lack of corroboration; and (2) the evidence was legally and factually insufficient to support the findings of guilty. On 11 August 2022, TJAG found no error prejudicial to Appellant's substantial rights and denied relief.

On 28 September 2022, Appellant applied to this court for grant of review pursuant to Article 69(d)(1)(B), UCMJ, 10 U.S.C. § 869(d)(1)(B), raising two issues: (1) whether the military judge abused her discretion by failing to suppress Appellant's statements to law enforcement for lack of corroboration; and (2) whether the evidence was legally sufficient to support the findings of guilty. On 5 January 2023, this court specified four issues for briefing by the parties.[2]

---

[1] All references to the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] This court specified the following issues:

> [(1)] WHETHER THE REFERENCES TO ARTICLE 65(B), UCMJ, [10 U.S.C. § 865(b),] WHERE THEY APPEAR IN ARTICLE 69, UCMJ, AS AMENDED IN SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, NEGATE (A) THE AUTHORITY OF [TJAG] TO REVIEW APPLICATIONS FOR RELIEF UNDER ARTICLE 69(C), UCMJ; OR (B) THE AUTHORITY OF THIS COURT UNDER ARTICLE 69(D), UCMJ, TO REVIEW THE ACTION OF [TJAG].
>
> [(2)] WHETHER THE APPLICATION FOR RELIEF TO [TJAG] WAS PROPERLY THE SUBJECT OF REVIEW BY [TJAG] UNDER

The parties filed responsive briefs on 6 and 10 February 2023, and Appellant filed a reply to the Government's brief on 17 February 2023.

On 3 March 2023, this court granted Appellant's application for review and ordered the Government to file an answer brief, which the Government did on 3 April 2023. Appellant filed a reply brief on 5 April 2023.

We have carefully considered the parties' briefs regarding the specified issues. We are satisfied that pursuant to Article 69(d), UCMJ, this court has jurisdiction to review TJAG's determination that no error prejudicial to Appellant's substantial rights occurred, and no further discussion of the specified issues is required here. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With regard to the issues Appellant has raised, we find no relief is warranted, and we affirm the findings and sentence.

## I. BACKGROUND

On 4 July 2020, Appellant, who was stationed at Vance Air Force Base (AFB), Oklahoma, was visiting his friend First Lieutenant (Lt) JD, who was stationed at Cannon AFB, New Mexico. Lt JD lived in an off-base house in Clovis, New Mexico. Lt JD's wife was out of town at the time.

On the night of 4–5 July 2020, one of Lt JD's neighbors, Staff Sergeant (SSgt) GG, was socializing outdoors with his wife and several friends and neighbors. Sometime close to midnight, they noticed Lt JD's dog had gotten out of Lt JD's house. SSgt GG and the others took control of the dog and decided to keep it overnight for safety and return it to Lt JD in the morning.

Shortly thereafter Lt JD came toward the group, "yelling and screaming" and asking where his dog was. SSgt GG and the others told Lt JD they had the dog and agreed to return it. According to SSgt GG's trial testimony, Lt JD then "screamed" at them that he was "high on LSD." Lt JD began walking up and down the street screaming as the others followed him and attempted to talk to him. At one point, Lt JD punched another friend of his, Lt KF, who was trying

---

ARTICLE 69, UCMJ, AS AMENDED BY SECTION 5333 OF THE NATIONAL DEFENSE AUTHORIZATION ACT FOR FISCAL YEAR 2017, OR BY ANY OTHER LAW.

[(3)] IF THE APPLICATION FOR GRANT OF REVIEW IS NOT PROPERLY BEFORE THIS COURT, WHAT RELIEF, IF ANY, DOES THIS COURT HAVE AUTHORITY TO ORDER?

[(4)] IF THE APPLICATION FOR GRANT OF REVIEW IS PROPERLY BEFORE THIS COURT, AND IF THIS COURT GRANTS REVIEW, WHAT IS THE SCOPE OF THE REVIEW UNDER ARTICLE 69(D), UCMJ?

to talk to him. At another point, Lt JD attempted to enter the locked home of another neighbor without permission.

During this disturbance, Appellant exited Lt JD's house and stood in the front yard. According to SSgt GG, Appellant then joined the group that was following Lt JD as he wandered around the street.

When SSgt GG tried to prevent Lt JD from entering a neighbor's garage, Lt JD punched SSgt GG in the face. Lt JD then left the garage, and SSgt GG went into the backyard of the neighbor's house. Appellant came into the backyard to speak with SSgt GG, accidentally breaking a screen door in the process. According to SSgt GG, Appellant repeatedly said to him, "Do we have a problem? I think we have a problem. What's going on?" SSgt GG noticed that, like Lt JD, Appellant's eyes were "completely glassed over and [with] large pupils." SSgt GG convinced Appellant to return to the street to look for Lt JD's dog.

Civilian police began to arrive shortly thereafter. The first to arrive was Officer TR, who approached Lt JD and Appellant who were on the street. Lt JD told Officer TR that "[Lt JD] and his buddy w[ere] on LSD and it was the smartest thing they've done." Shortly thereafter, Lt JD also punched Officer TR in the face. SSgt GG saw Appellant sit down on his knees when Lt JD struck Officer TR. With difficulty, Officer TR and other officers were eventually able to subdue and restrain Lt JD, who resisted despite being hit repeatedly with a taser, pepper spray, and a baton. After Lt JD was apprehended, he persisted in incessantly shouting repetitive and incoherent statements.[3]

At trial, Officer TR described his observations of Appellant that night. He noticed Appellant had blood on his shirt. Appellant's pupils were dilated. Appellant "asked multiple times what was going on" and "was having trouble following the situation." Appellant exhibited what Officer TR considered strange behavior by attempting to interject and introduce himself when Officer TR was initially trying to speak with Lt JD, and later by offering Officer TR a beer. Officer TR opined that Appellant did not appear to be under the influence of alcohol because, although apparently confused, he was not "slow" or "lethargic" and did not smell like alcohol.

Officer AO, another civilian police officer who responded to the incident, also testified at trial. Officer AO spoke with Appellant for approximately 20

---

[3] Examples of such statements recorded on police body camera video include: "We have literally lived out every reality;" "The hacker likes to think we're going to hell;" "Ryan! We hit the quadrillionth, so the brain named itself;" "This is the hundred millionth time that the brain has named itself;" "It's so smart on an LSD trip that I just hit a hundred billion times in the universe in which I—the brain named itself;" and "This is the classic example of one human being getting too smart to even finish this sentence."

minutes after other officers had restrained Lt JD. Officer AO noticed Appellant had blood on his arm and neck and a bruise on his eyebrow. Appellant seemed "disoriented," "a little confused, [and] not in tune to the whole situation that was going on." Appellant seemed unable to "maintain a conversation" with the police officers or with a medical technician who was attempting to ask Appellant questions about Lt JD. Officer AO opined Appellant seemed "impaired" but did not seem drunk, did not smell like alcohol, and was not swaying, staggering, or slurring his speech. Appellant's pupils were dilated, but his eyes were not bloodshot or watery. Officer AO noted Appellant repeatedly offered the police beer, which Officer AO thought was "odd" under the circumstances.

In response to questions, Appellant told Officer AO multiple times that he and Lt JD had taken "acid," meaning LSD. When Officer AO asked Appellant when they took "acid," Appellant responded "about an hour ago." Officer AO advised Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and continued to ask about Appellant's use of "acid." When Officer AO asked if they had used "acid" in the form of "strips," Appellant said they had. Eventually Appellant asked to speak with a lawyer.

Officer AO and other officers went into Lt JD's house to ensure there were no other individuals requiring medical attention. The police found empty alcohol containers and a firearm belonging to Lt JD, which they secured, but they did not find LSD or other physical evidence of illicit drug use.

The police arrested and removed Lt JD, but Appellant was left at Lt JD's house. Lieutenant Colonel (Lt Col) BA, Lt JD's squadron commander, was notified by the Air Force Office of Special Investigations (AFOSI) that Appellant was at Lt JD's house and needed to be "pick[ed] up for questioning and possible urinalysis." Lt Col BA and a senior noncommissioned officer (SNCO) met two AFOSI agents at the house at approximately 0730 on 5 July 2020. Appellant eventually answered the door, appearing "disheveled." Lt Col BA explained to Appellant who he was and that he was giving Appellant an order to go with them to Cannon AFB. Lt Col BA testified Appellant was initially not compliant, and that Appellant repeatedly asked who Lt Col BA was, what they were doing, and where Lt JD was. Lt Col BA described Appellant as "spacey." It took Appellant approximately ten minutes to find socks to wear, and Appellant asked about a barking dog that neither Lt Col BA nor the SNCO could hear. Later that morning, Appellant was initially not compliant in providing a urine sample. According to Lt Col BA, Appellant did not provide a urine sample until they called Appellant's squadron at Vance AFB and Appellant spoke with his commander. Lt Col BA saw Appellant again on 6 July 2020 and, in contrast to Appellant's behavior on 5 July 2020, described him as "[d]ifferent from the individual I had first met . . . very respectful in his communication with me[,] [j]ust like a well put together officer."

Appellant's urine sample was sent to the Air Force Drug Testing Laboratory for analysis. For reasons that are not entirely clear from the evidence introduced at trial, the sample was not tested for the presence of LSD or its metabolite. Appellant's urine sample tested negative for the presence of other drugs, and was subsequently destroyed. The Government introduced no evidence that Lt JD's urine was tested for the presence of LSD.

## II. DISCUSSION

### A. Motion to Suppress Admissions for Lack of Corroboration

#### 1. Additional Background

Before trial, the Defense moved to suppress certain statements Appellant had made, including *inter alia* his admissions to Officer AO that he had used "acid." The Defense emphasized the lack of forensic evidence or independent witness testimony that Appellant had used LSD, and contended Appellant's admissions lacked sufficient corroboration required by Military Rule of Evidence (Mil. R. Evid.) 304(c). The Government opposed the motion.

The military judge conducted a hearing on the motion during which she received testimony from four witnesses. Lt JD, testifying under a grant of immunity and an order to testify from the General Court-Martial Convening Authority, stated he had been at a party at a friend's house with Appellant drinking alcohol on 4 July 2020, and had no memory of events between that point and waking up in a hospital the following day. He denied seeing Appellant use controlled substances during the period of time that he could remember on 4 July 2020. AM, a civilian who attended the same party and who was also present for some of the later events outside Lt JD's house, testified that Lt JD began acting "weird" and "paranoid" at the party, which was confusing to Appellant and others. She did not observe Appellant or Lt JD ingest controlled substances. Officers TR and AO also testified at the hearing and were generally consistent with their trial testimony described above. The military judge also considered police body camera video recordings depicting Appellant's behavior and interactions with Officer AO.

The military judge issued a written ruling denying the Defense's motion.[4] She determined Appellant's "multiple instances of incongruent or inappropriate behavior" constituted "sufficient independent evidence establishing the trustworthiness of [Appellant's] admissions of using LSD." In particular, the military judge cited evidence that Appellant and Lt JD were running outside barefoot in the rain; Lt JD's admissions that he and Appellant had used LSD;

---

[4] In her ruling, the military judge noted that during the motion hearing, trial counsel clarified the Government's intent to introduce only those admissions Appellant made to Officer AO before Appellant requested to speak with a lawyer.

Appellant's presence with Lt JD in Lt JD's home; Appellant's interruption of Officer TR when he was attempting to speak with Lt JD; Appellant's apparent confusion, distraction, and disorientation when speaking with others; Appellant's inappropriately happy affect at times, given the circumstances; the police officers' impression that Appellant was not under the influence of alcohol; and Appellant's uncooperative and delaying behavior during the urine sample collection, suggesting consciousness of guilt. The military judge further found the probative value of the evidence was high and not substantially outweighed by the dangers of unfair prejudice, misleading the court members, or confusion of the issues.

**2. Law**

We review a military judge's decision to admit a statement under Mil. R. Evid. 304(c) for an abuse of discretion. *United States v. Whiteeyes*, 82 M.J. 168, 172 (C.A.A.F. 2022) (citing *United States v. Jones*, 78 M.J. 37, 41 (C.A.A.F. 2018)). "A military judge abuses [her] discretion when: (1) the findings of fact upon which [she] predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). "For [a] ruling to be an abuse of discretion, it must be 'more than a mere difference of opinion'; rather, it must be 'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous.'" *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)).

"An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession." Mil. R. Evid. 304(c)(1).

> If the independent evidence raises an inference of the truth of the admission or confession, then it may be considered as evidence against the accused. Not every element or fact contained in the confession or admission must be independently proven for the confession or admission to be admitted into evidence in its entirety.

Mil. R. Evid. 304(c)(2). The corroborating evidence "need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession." Mil. R. Evid. 304(c)(4).

In *Whiteeyes*, the United States Court of Appeals for the Armed Forces (CAAF) explained the procedures and standards a military judge is to apply when determining whether an accused's admission or confession has been

corroborated in accordance with the version of Mil. R. Evid. 304(c) that went into effect in 2016. 82 M.J. at 174. First, the Government must proffer independent direct or circumstantial evidence it believes corroborates the accused's statement. *Id*. The military judge must determine whether the proffered corroboration is in fact "independent evidence," which does not include other uncorroborated confessions or admissions of the accused. *Id*. (citing Mil. R. Evid. 304(c)(2)). Next, the military judge must decide whether each piece of proffered corroboration, either individually or in conjunction with other evidence, raises an inference of truth as to the admission or confession. *Id*. (citing Mil. R. Evid. 304(c)(2)). Finally, the military judge must determine whether the proffered "pieces of independent evidence, considered together, corroborate the accused's admission or confession"—that is, "whether the pieces of independent evidence 'would tend to establish the trustworthiness of the admission or confession.'" *Id*. (footnote omitted) (quoting Mil. R. Evid. 304(c)(1)). "[T]he two quantum thresholds contained in [Mil. R. Evid.] 304 are low." *Id*. at 174 n.6.

The military judge may exclude relevant evidence that is otherwise admissible if its probative value is substantially outweighed by a countervailing concern, including *inter alia* unfair prejudice, confusion of the issues, or misleading the members. Mil. R. Evid. 403. "A military judge enjoys 'wide discretion' in applying Mil. R. Evid. 403." *United States v. Harris*, 46 M.J. 221, 225 (C.A.A.F. 1997) (citation omitted).

### 3. Analysis

The military judge did not abuse her discretion in ruling Appellant's admissions to Officer AO were sufficiently corroborated by independent evidence as required by Mil. R. Evid. 304(c). Her material findings of fact were supported by the evidence. She quoted the correct version of Mil. R. Evid. 304(c), recognizing in 2016 the prior "essential facts test was replaced with a trustworthiness standard" as stated in *United States v. Delgado*, No. 201900065, 2019 CCA LEXIS 314, at *6 (N.M. Ct. Crim. App. 31 Jul. 2019) (unpub. op.), *rev. denied*, 82 M.J. 315 (C.A.A.F. 2022). Her application of the rule to the evidence was not clearly unreasonable. Although the military judge did not have the benefit of the CAAF's explanation of the current rule in *Whiteeyes*, her ruling is consistent with the CAAF's guidance. The military judge could reasonably determine the pieces of evidence she cited, although circumstantial, tended to suggest on the night in question Appellant was under the influence of a substance other than alcohol, and raise an inference of truth as to his admissions that he knowingly ingested LSD with Lt JD. Considered together, this evidence meets the low standard to corroborate his admissions by tending to establish the trustworthiness of his admissions. Moreover, we find the military judge properly applied the Mil. R. Evid. 403 balancing test.

Arguing the military judge erred, Appellant cites several "critical facts" that the military judge "failed to include in her findings of fact," including *inter alia*: that other substances besides LSD could produce the symptoms Appellant exhibited; that the police found empty beer bottles in Lt JD's house; that the police found no physical evidence of LSD or drug paraphernalia; and that before Appellant spoke with Officer AO, Appellant told a medical technician he had not used any substances other than alcohol. However, the existence of this other evidence does not materially undermine the military judge's determination that the Government did offer independent pieces of evidence that raised an inference of truth as to Appellant's admissions, and considered together tended to establish the trustworthiness of those admissions.

Applying the *Whiteeyes* framework,[5] Appellant further argues the military judge "erred in concluding that the Government's proffered evidence constituted 'independent evidence,'" "erred in concluding that the corroborating evidence raised an inference of truth," and "erred in concluding that the evidence tended to establish the trustworthiness of Appellant's admissions." We do not find these arguments persuasive. Appellant largely focuses on other evidence in the record, besides the proffered corroboration, that he argues tends to make Appellant's admissions to using LSD less reliable—for example, the fact that Appellant exhibited very different behavior than Lt JD, and AM's testimony that she did not observe Appellant use any controlled substance before Lt JD began acting strangely. However, the Mil. R. Evid. 304(c) analysis the CAAF explained in *Whiteeyes* focuses on the proffered corroboration evidence itself, and whether that evidence tends to establish the trustworthiness of the admissions; the analysis is not a comparison or balancing between the proffered corroborating evidence and other evidence that may weigh against reliability. In the exercise of her discretion, the military judge may choose to evaluate what, if any, corroborating effect the proffered evidence has, while also taking into consideration the other available evidence. In the instant case, we find the military judge's conclusion that Appellant's admissions were corroborated by independent evidence was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *See Collier*, 67 M.J. at 353 (citation omitted).

## B. Legal Sufficiency of the Evidence

### 1. Law

---

[5] Appellant submitted his original petition to this court before the CAAF decided *Whiteeyes*. Appellant's reply brief to the Government's answer essentially concedes some of the legal arguments made in the original petition, although "an appropriate exploration of the state of the law at the time," have effectively been overtaken by *Whiteeyes*. Accordingly, Appellant's reply brief significantly reframes some of his arguments in terms of the CAAF's explanation of Mil. R. Evid. 304(c) in *Whiteeyes*.

"Notwithstanding [Article 66, UCMJ, 10 U.S.C. § 866], in any case reviewed by a Court of Criminal Appeals under [Article 69(d), UCMJ], the Court may take action only with respect to matters of law." Article 69(e), UCMJ, 10 U.S.C. § 869(e).

We review legal sufficiency of the evidence de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our review of legal sufficiency "is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

"Findings may be based on direct or circumstantial evidence. Rule for Courts-Martial 918(c); *see also King*, 78 M.J. at 221 ("[T]he [G]overnment is free to meet its burden of proof with circumstantial evidence.") (citations omitted).

In order to convict Appellant of violating Article 112a, UCMJ, as charged here, the Government was required to prove beyond a reasonable doubt that Appellant used LSD, and such use was wrongful. *See* 10 U.S.C. § 912a; *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 50.b.(2). "[U]se . . . of a controlled substance is wrongful if it is without legal justification or authorization." *MCM*, pt. IV, ¶ 50.c.(5). "[U]se . . . of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary." *Id.*

### 2. Analysis

Despite the absence of forensic evidence, we find Appellant's conviction for wrongfully using LSD meets the low threshold for legal sufficiency. Appellant admitted to Officer AO that he and Lt JD used "acid," meaning LSD, in the form of paper strips. Circumstantial evidence reinforced the credibility of these admissions. The testimony of multiple witnesses who observed and spoke with Appellant on 4 and 5 July 2020 suggests Appellant was under the influence of an intoxicating substance. Appellant's pupils were dilated. He seemed

disoriented and confused, and he apparently had difficulty grasping the events occurring around him. He repeatedly asked the same questions and made the same comments over and over again. The video recording from Officer AO's body camera, admitted as a prosecution exhibit, portrays Appellant in a similar light. Officers TR and AO opined that based on their experience, Appellant did not exhibit typical symptoms of being drunk from alcohol, such as lethargy, slurred speech, or difficulty standing or moving. Moreover, Lt JD—who Appellant had been with—also repeatedly asserted he and Appellant had used LSD, although Lt JD exhibited much more dramatic symptoms of being under its influence. Moreover, there is no evidence of any legal justification or authorization for Appellant to have used LSD.

Viewing the evidence in the light most favorable to the Government, a rational finder of fact could credit Appellant's admission that he used LSD at or near Clovis, New Mexico, between on or about 4 July 2020 and on or about 5 July 2020. Accordingly, we find the evidence is legally sufficient to support Appellant's conviction for wrongful use of LSD.

### III. CONCLUSION

The findings and sentence as entered are correct in law, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 69(e), UCMJ, 10 U.S.C. §§ 859(a), 869(e). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

FLEMING E. KEEFE, Capt, USAF
Acting Clerk of the Court